**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 84 MAP 2015 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 3553 EDA 2013 dated |
| | : | March 5, 2015, reconsideration denied |
| v. | : | May 8, 2015, Vacating & Remanding |
| | : | the Judgment of Sentence of the |
| | : | Montgomery County Court of Common |
| RAFIE L. ALI, | : | Pleas, Criminal Division, dated |
| | : | November 26, 2013 at Docket No. CP- |
| Appellee | : | 46-CR-0005222-2012. |
| | : | |
| | : | ARGUED: May 11, 2016 |

**OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED: November 22, 2016**

This Court granted discretionary review to determine the propriety of the trial court considering victim impact evidence at a sentencing proceeding where the offenses at issue were not crimes against a person. Citing 42 Pa.C.S. §9738 ("Victim impact statements"), the Superior Court held, as a matter of law, such evidence is irrelevant and inadmissible at sentencing under such circumstances, the trial court therefore abused its discretion, and resentencing was required. We respectfully disagree with this broad holding and, in particular, the construction of Section 9738 as a provision circumscribing evidentiary relevance at sentencing. Accordingly, we vacate the order of the Superior Court and remand for resentencing consistent with both this opinion and the Superior Court's independent grounds for remand.

On May 21, 2012, Roger Malloy drove Robert Malloy, Kendall Harper and James Crawford to the Achi Store, a convenience store in Pottstown owned and operated by appellee and a partner, Muhammed Himed. N.T. 6/11/13 at 132-33. Harper and Crawford entered the store and purchased K2, a synthetic marijuana, from Himed. Roger Malloy later picked up Rachel Witt. The entire group, except for Harper, then drank alcohol and smoked the K2 purchased at the Achi Store. *Id.*

Later that evening, Roger Malloy, Witt and Crawford were involved in a serious automobile accident. As a result, Rachel Witt and James Crawford died while Malloy, the driver, survived. Police recovered K2 from the vehicle and a laboratory test detected the substance in Roger Malloy's blood system; Harper told police the K2 was purchased at the Achi Store. *Id.* at 131-133. As a result, Pottstown Police Officers Breslin and Yambrick were directed to attempt an undercover purchase of K2 from the Achi Store.

Upon entering the store, Officer Breslin asked appellee if he had "Kush," a brand of K2, appellee replied, "No, I don't," and Breslin exited. *Id.* at 20. Officer Yambrick entered the store an hour later, however, and purchased two containers of K2 from appellee. *Id.* at 35. Yambrick returned to the store to check for surveillance cameras and saw appellee sell K2 to an unknown individual. *Id.* at 46-48. Officers then obtained a search warrant and recovered 36 vials of K2, a .40 caliber handgun and various items used to smoke marijuana and crack cocaine. *Id.* at 85-103.

Appellee and Himed were arrested and charged with, *inter alia,* corrupt organizations, criminal conspiracy, delivery of paraphernalia and possession with intent to deliver a controlled substance.[1] Included in those charges was possession with

---

[1] 18 Pa.C.S. §911(b)(3)-(4); 18 Pa.C.S. §903; 35 P.S. §780–113(a)(33); and 35 P.S. §780–113(a)(30), respectively.

intent to deliver K2 arising from the sale to Harper and Crawford. The cases against appellee and Himed were consolidated with the prosecution of Roger Malloy for homicide by vehicle while driving under the influence. However, the trial court, per the Honorable S. Gerald Corso, granted a defense motion to sever the cases from Malloy's prosecution. Himed and Malloy ultimately pleaded guilty before the Honorable Steven T. O'Neill. Thereafter, appellee's case proceeded to a jury trial before Judge O'Neill. Although the Commonwealth presented evidence of the purchases of K2 by Harper and Crawford, evidence regarding the fatal accident was not presented to the jury. The jury found appellee guilty of corrupt organizations, criminal conspiracy, delivery of paraphernalia and four counts of possession with intent to deliver synthetic cannabinoids, including Himed's sale to Harper and Crawford.

At appellee's sentencing, the Commonwealth sought to introduce victim impact evidence by incorporating the testimony of family members of Rachel Witt and James Crawford from Malloy's sentencing hearing. Appellee objected on relevance grounds, arguing Malloy's use of K2 sold by Himed could not be deemed the cause of the fatal accident. Appellee argued Malloy had been drinking alcohol, organic marijuana was also present in his blood system, and there was no evidence of the effects the K2 may have had on him. Appellee did not argue a statutory bar to the evidence. N.T. 11/26/13 at 23. Judge O'Neill allowed the Commonwealth to attempt to establish a causal relationship between the sale of the K2 to Harper and Crawford and the accident.

The Commonwealth then introduced evidence indicating the following: K2 from the Achi Store was recovered from the vehicle after the accident; Malloy stated he smoked K2 before the accident, which caused his heart to beat fast and his vision to blur, leading to the accident; and K2 is known to cause heart attacks and strokes. *Id.* at

33-40. The trial court also allowed the Commonwealth to incorporate the victim impact testimony from Malloy's sentencing hearing before Judge O'Neill. *Id.* at 44.

Although the court acknowledged "there [was] nothing" to allow a jury to affirmatively find appellee directly caused the deaths of Witt and Crawford, the court determined it could not ignore the connection between the sale of the K2 and the fatal accident. *Id.* at 72. The court explained this connection as follows:

> [The deaths are] connected to what you do, Mr. Ali, exactly what you do. If you peddle death and dangerous substances, you can expect something like this to happen. This is within the purview of being a business owner. If you take the risk, you should expect it. This is a stop and shop. This is not a sit-down store where people come in and dine. It is meant to buy something and go.
>
> And when people buy something and go in the nature of convenience stores in this society, they do so by vehicle. They drive up and they drive away. And if you sell them something that can lead to their death, that can lead to them being impaired, then this is a consequence that should be readily known to you.
>
> … I believe you simply were operating for profit, you took a risk, and your risk ended up contributing, leading, being connected to, whatever you want to say — the Court is not finding that you caused their death [sic] directly, but you certainly were connected to a series of horrific events that led to unspeakable tragedy for the families that this Court had to listen to during the sentencing phase of [Malloy's] case. So I cannot turn a blind eye to it. It is simply a fact. And that was the tragic turn of events that now leads to your conviction and your sentencing.

*Id.* at 72-73. The court then applied and considered school zone and youth enhancements in calculating the sentencing guidelines, before ultimately sentencing appellee to an aggregate term of seven to fourteen years' imprisonment. *Id.* at 66-67, 79-81.

On appeal to the Superior Court, appellee raised a number of claims related to both trial and sentencing. The trial court filed an opinion pursuant to Pa.R.A.P. 1925. Respecting the victim impact issue, the court noted sentencing judges have discretion

to entertain testimony from a victim's family or friends "on the relevant sentencing issue of 'the gravity of the offense as it relates to the impact on the life of the victim and on the community.'" Trial Court Slip Op. at 9, *quoting Commonwealth v. Penrod*, 578 A.2d 486, 491-92 (Pa. Super. 1990), and *citing* 42 Pa.C.S. §9721 ("Sentencing generally"). The court added that all testimony connected in some way to appellee's case was relevant and stated: "[T]he court only considered testimony that was relevant to the gravity of his offenses and their relation to the impact on the lives of the victims and on the community." *Id.* at 12.

Appellee argued to the Superior Court that the trial court erred in considering the victim impact testimony from Malloy's sentencing. Citing *Commonwealth v. Smithton*, 631 A.2d 1053 (Pa. Super. 1993), appellee contended the discretion afforded sentencing courts is not unfettered, but is constrained by relevancy. Appellee argued sentencing courts have no legal authority to consider victim impact evidence where, as here, the defendant is not convicted of a crime against a person. He asserted the sentencing court abused its discretion by permitting the introduction of the memorialized impact statements. Appellee further argued the trial court's reliance on *Penrod* was misplaced as Penrod pleaded guilty to a DUI charge involving an accident which directly caused injuries to the victims, which is not the case here. Finally, appellee posed a statutory argument he did not forward at sentencing, contending the trial court was not permitted to consider victim impact testimony because the family members of Witt and Crawford were not victims under the Crime Victims Act (the Act), 18 P.S. §§11.101-11.5102. Section 11.103 of the Act defines "victim" as including: a direct victim; a parent of a child who is a direct victim; a minor child who is a material witness to a homicide, aggravated assault or rape against a family member; and a family member of a homicide victim. *See* 18 P.S. §11.103. Because his drug-related crimes produced no

victim as that term is defined in the Act, appellee asserted the victim impact evidence was inadmissible.

The Commonwealth responded that a sentencing court has discretion to consider any evidence relevant to determining an appropriate sentence, the trial court found the deaths of Witt and Crawford were reasonably linked to appellee's criminal enterprise, and that conclusion was supported by substantial evidence. In the Commonwealth's view, the victim impact testimony was relevant to determining an appropriate sentence.

The Superior Court denied relief on appellee's trial-related claims, but vacated the judgment of sentence and remanded for resentencing in a unanimous, published opinion. The panel determined the trial court erred respecting the victim impact issue and by applying the school zone and youth enhancements in fashioning appellee's sentence. *Commonwealth v. Ali*, 112 A.3d 1210 (Pa. Super. 2015). The panel's holding regarding the school zone and youth enhancements is not before this Court; thus, remand for resentencing is required irrespective of our decision, though our decision will affect the parameters of resentencing.

The panel began by identifying the standard of review for challenges to the admission of victim impact statements as abuse of discretion. *Id.* at 1222, *citing Commonwealth v. Flor*, 998 A.2d 606, 634 (Pa. 2010). In considering whether the trial court abused its discretion, the panel deemed dispositive 42 Pa.C.S. §9738, a provision not cited by the parties or argued to the trial court.

By way of background, Section 9738 appears in the Sentencing Code, 42 Pa.C.S. §§9701-9799.41, as part of Subchapter D (Informational Basis of Sentence), and is titled "Victim impact statements." The provision acts to limit the sequestration of crime victims at trial, providing that victims cannot be ordered sequestered from trial merely because they may later make victim impact statements at sentencing:

**(a) General rule.**—Notwithstanding any other statute, rule or provision of law to the contrary, in the trial of a defendant accused of an offense, … a court shall not order the exclusion of any victim of the offense from the trial on the basis that the victim may, during the sentencing phase of the proceedings:

> (1) make a victim impact statement or present any victim impact information in relation to the sentence to be imposed on the defendant; or

> (2) testify as to the effect of the offense on the victim or the family of the victim.

42 Pa.C.S. §9738(a)(1)-(2). The ensuing definitional section refers to the Act as one way to define "victim" for purposes of Section 9738(a): "As used in this section, the term 'victim' shall mean a 'victim' as defined in" Section 11.103 of the Crime Victims Act or 18 Pa.C.S. §3001 (relating to definitions). 42 Pa.C.S. §9738(b).[2] In this regard, then, Section 9738 overlaps to an extent with appellee's Crime Victims Act argument.

The Superior Court panel construed Section 9738 as a provision circumscribing the admissibility of victim impact testimony at sentencing. *See Ali*, 112 A.3d at 1222-23 ("[A]s section 9738 makes clear, before victim impact statements may be admitted at a sentencing hearing, there first must be an identifiable victim of the crime for which the defendant was convicted."). The panel then considered whether the family witnesses in this case were "victims" of appellee's crimes under Section 9738, which in turn required determining whether they were "victims" under Section 11.103 of the Act. In the panel's view, because appellee was not convicted of a crime against a person, "there is no identifiable victim to render a victim impact statement admissible." *Id.* at 1223.

---

[2] There is no issue before the Court concerning the definition of victim in 18 Pa.C.S. §3001.

The panel stated although there may have been a "connection" between the sale of K2 and the deaths of Witt and Crawford, as the trial court had noted, "a mere link between two distinct events is insufficient to trigger the applicability of [S]ection 9738." *Id.* The panel held "[t]he unambiguous language of the statute requires a victim to be identified as such before his or her victim impact statement is admissible," and the Act "requires proof of a 'direct victim' and similarly situated individuals; it does not define a 'victim' based upon the Commonwealth's ability to string together attenuated connectors tying an individual to indirectly-related events[.]" *Id.* The panel then opined that Witt and Crawford were "not [appellee's] victims under any reasonable reading of section 9738, particularly where all parties admit that [appellee] did not commit the specific act that led to the fatal wreck." *Id.*

The panel concluded by relying on the *Smithton* case cited by appellee. In *Smithton*, the defendant was charged with criminal trespass, disorderly conduct and resisting arrest, but the jury found him guilty only of the latter two charges. These offenses occurred at a hospital after the alleged criminal trespass and at Smithton's arraignment, respectively. Notwithstanding the criminal trespass acquittal, the court at sentencing allowed the criminal trespass victims to testify to the impact of the trespass on their lives. On appeal, Smithton argued the testimony was impermissible. The *Smithton* Court agreed and vacated the sentence. The panel noted the crimes of which Smithton was convicted were contained in informations separate from the criminal trespass and did not involve the trespass or those victims; thus, the victims' testimony was irrelevant. *Smithton*, 631 A.2d at 1057.

The panel below held *Smithton* supported its holding because, as in *Smithton*, the victim impact testimony here was irrelevant because appellee was not charged with, or convicted of, any offense relating to the deaths of Witt and Crawford. By way of

mandate, the panel directed that at resentencing "the trial court may not consider the victim impact testimony." *Ali*, 112 A.3d at 1224. The panel did not address the trial court's reliance upon the language of Section 9721(b) of the Sentencing Code requiring sentencing courts to consider, *inter alia*, the "protection of the public," and "the gravity of the offense as it relates to the impact on the life of the victim and on the community…."[3]

This Court accepted review to address the following question raised by the Commonwealth: "Does a sentencing judge have discretion to consider victim impact evidence where the offense is not a 'crime against a person?'" *Commonwealth v. Ali*, 127 A.3d 1286 (Pa. 2015) (*per curiam*). The question of the parameters of a sentencing judge's discretion, in this case implicating the proper construction of both Section 9721(b) and Section 9738 of the Sentencing Code, is one of law. Hence, our review is plenary and non-deferential. *See, e.g., Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014); *Commonwealth v. Garzone*, 34 A.3d 67, 74 (Pa. 2012).

The Commonwealth argues the Superior Court's holding that Section 9738 operates as an evidentiary prohibition on victim impact evidence at sentencing from families of decedents who were not direct victims of the offenses at issue is unsupported by the statutory text, prevailing decisional law, and 42 Pa.C.S. §9721(b), the more directly relevant provision of the Sentencing Code. Regarding the

---

[3] Section 9721(b) provides, in relevant part:

> **(b) General standards.—**In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. §9721(b).

construction of Section 9738, the Commonwealth stresses the text of the statute prohibits a trial court from sequestering victims at trial based on the possibility they may provide impact testimony at sentencing, and "has nothing to do with restricting the admissibility of victim impact evidence." Appellant's Brief at 12. The Commonwealth describes Section 9738 as a provision "giv[ing] a statutory right to a narrow, statutorily-defined class of crime victims; it does not take away the sentencing judge's discretion to hear from other crime victims or those from the community who may have been harmed by a defendant's crimes." *Id.*

Relying on the Sentencing Code more generally, the Commonwealth posits that the panel's holding cannot be reconciled with Section 9721(b), which directs judges to fashion a sentence consistent with, *inter alia*, "the gravity of the offense as it relates to the impact on the life of the victim and on the community." The Commonwealth notes Section 9721(b) applies to all crimes, not just crimes against persons. It argues the panel's limitation of impact evidence only to those who suffered actual harm from the crimes, or their families, renders the statute's "impact on the community" language meaningless. *Id.* at 14-15.

The Commonwealth crafts two distinct points respecting existing decisional law. First, the Commonwealth argues the panel's proscriptive holding is inconsistent with the judicial recognition of the broad discretion afforded a sentencing court, which is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Id.* at 12, *quoting Commonwealth v. Ward*, 568 A.2d 1242, 1243 (Pa. 1990). The Commonwealth contends the panel's holding limits victim impact testimony to physical and sexual crimes and prohibits a sentencing judge from hearing relevant victim and community impact evidence in a case such as this one. The Commonwealth maintains "such evidence may not only be

relevant, but indispensable to a full assessment of the gravity of the crime." *Id*. at 13. In support it provides the following examples: "a drug-dealer who sells drugs that lead to a fatal crash, or a straw purchaser who gives a gun to a murderer, a burglar who destroys a family's sense of security, or a doctor who prescribes controlled substances for profit and fosters addiction in his patients." *Id*. at 13-14. The Commonwealth contends a sentencing judge must have discretion to determine whether such evidence is relevant on a case-by-case basis.

Second, the Commonwealth contends the decision below is irreconcilable with Superior Court precedent construing Section 9721(b), citing numerous decisions where evidence has been held admissible at sentencing to show the impact of a crime on members of the community. *Id*. at 16-17, *citing Commonwealth v. Curran*, 932 A.2d 103, 106-07 (Pa. Super. 2007) (proper to consider two people died as indirect result of furnishing alcohol); *Commonwealth v. Griffin*, 804 A.2d 1, 10-11 (Pa. Super. 2002) (proper to consider drug crimes on low income neighborhood); *Commonwealth v. Roden*, 730 A.2d 995, 998 (Pa. Super. 1999) (proper to consider that babysitter's murder of infant made families afraid to take children to caregivers); *Commonwealth v. Penrod*, 578 A.2d at 492 (proper to consider injuries sustained by others as result of DUI).

The Commonwealth also contends the panel's reliance on the *Smithton* case was inapt because Smithton was charged with burglary and resisting arrest but was convicted only of resisting arrest; the victim impact testimony of the homeowners was not related to the conviction for resisting arrest. The Commonwealth contrasts the situation here, where family members of the victim impact witnesses perished in a vehicle driven by the consumer of drugs sold by the enterprise of which appellee was a part.

Finally, the Commonwealth argues the panel's decision will have far-reaching and dangerous policy consequences as it will apply not only to drug cases, but to crimes such as arson, theft and robbery, all of which are listed as offenses against property in the Crimes Code. The Commonwealth notes such property crimes have an impact upon victims and communities just the same as crimes against persons, and "[w]ithout hearing from those harmed by a defendant's crimes, sentencing judges often will not be able to assess the gravity of the offense as it relates to the life of the victim and community, … [which] is inconsistent with law and justice." Appellant's Brief at 16.

The Pennsylvania District Attorneys Association (PDAA) has filed an *amicus curiae* brief supporting the Commonwealth. PDAA posits that, in establishing a limitation upon evidence deemed relevant at sentencing, the Superior Court erred in relying upon an inapplicable statute — Section 9738, which addresses sequestration, not admissibility of evidence — while failing to apply the controlling statute — Section 9721(b), which requires the court to impose a sentence "consistent with **the protection of the public**, the gravity of the offense as it relates to the impact on the life of the victim **and on the community**, and the rehabilitative needs of the defendant." PDAA Brief at 8-9, *quoting* 42 Pa.C.S. §9721(b) (emphasis by PDAA). PDAA suggests, in considering the protection of the public and assessing the impact of a crime on the community:

> [A] sentencing court is obliged to consider the consequences of an offense for individual members of the community even if not "direct victims." Imposing a broader view, the General Assembly has recognized that criminal law exists to protect not only direct victims, but also the community that bears the indirect consequences of crime. Because "the public" that the court is obliged to protect is made up of individual members, the impact of the crime on particular citizens — whether or not they fit within the narrow category of "victims" — is clearly relevant at sentencing.

*Id.* at 9-10. In PDAA's view, the panel erred in limiting impact evidence to cases where "direct victims" and "crimes against a person" are implicated. PDAA further stresses the decisional law recognizes evidence other than strict "victim impact" testimony may be relevant at sentencing if it addresses the protection of the public and the impact of the offense on the community, including persons who were not direct victims of the crime. *Id.* at 10-12, *citing Flor*, 998 A.2d at 637 n.13 (alternative holding); *Commonwealth v. Davis*, 737 A.2d 792, 799 (Pa. Super. 1999); *Commonwealth v. duPont*, 730 A.2d 970, 986 (Pa. Super. 1999); *Penrod*, 578 A.2d at 491-92.

PDAA contends the impact evidence here was relevant to the protection of the public and the impact on the community of the crimes for which appellee stood convicted. Although the family members were not *per se* or direct victims of appellee's criminal enterprise, PDAA notes members of the community died as an indirect consequence of that enterprise; evidence of that impact was a pertinent sentencing consideration, with its relative weight a matter reserved to the sentencing court, and the trial court made clear on the record it was well aware of the nature of the connection of the drug enterprise and sale to the eventual car accident.

In response, appellee echoes the twin points made by the panel below: the definition of victim in Section 9738, incorporating Section 11.03 of the Crime Victims Act, limits victim impact testimony at sentencing, and the sentencing court's discretion is constrained by principles of relevance, as recognized in *Smithton*. Appellee acknowledges the tragedy befalling Witt and Crawford, but urges that the current legislative scheme does not consider them victims of appellee's crime, and thus impact testimony from their family members is not admissible or relevant.

Appellee concedes Section 9738 pertains to sequestration, but argues the panel properly considered the provision's definition of victim because that term, which also

appears in Section 9721(b), is not defined elsewhere in the Sentencing Code. Appellee then argues the panel properly deemed the Act's definition of victim to operate as a restraint upon the type of evidence to be proffered as victim impact evidence. Regarding relevance, appellee maintains Witt and Crawford were the victims of Malloy's DUI-related crime, and were not victims of appellee's conduct. Appellee asserts the case for relevance-based exclusion of the impact testimony here is more compelling than in *Smithton* because appellee was never charged in connection with the fatal accident and he was not the person who sold the K2 to Crawford and Harper, which contributed to Malloy's later impairment.

Finally, appellee disputes the Commonwealth's claim that the decision below will have dire consequences generally. In his view, the panel did not establish a bright-line rule of preclusion for cases where the crime is not against a person; rather, the panel merely correctly applied the definition of "victim" to the facts of his case. Appellee contends the panel below only "determined that there must first be an identifiable victim of the crime for which the defendant was convicted prior to introducing victim impact testimony." Appellee's Brief at 15, *citing Ali*, 112 A.3d at 1223 (emphasis omitted).

Upon review, we are substantially aligned with the position of the Commonwealth and PDAA respecting the proper interpretation of Section 9738, the operation of the Sentencing Code in general, and the operation of Section 9721(b), which the trial court invoked, in particular. By its plain terms, Section 9738 does not purport to address the admissibility of victim impact evidence, but merely operates to protect certain crime victims from being sequestered at trial based on the possibility they may later offer victim impact evidence. While appellee may be correct that no other provision of the Sentencing Code defines the term victim, it is notable that, in incorporating the Act's restrictive definition, Section 9738(b) does not suggest an intention to address the

Sentencing Code as a whole. To the contrary, the General Assembly specifically limited the incorporated definition to Section 9738, stating "**[a]s used in this section**," the term victim has the meaning ascribed to it in the Act (or in 18 Pa.C.S. §3001). Section 9738(b) contains no reference, for example, to the meaning of the term "victim" for purposes of Section 9721(b).

Furthermore, Section 9721(b), which the panel failed to discuss, has a broader focus than the panel derived from Section 9738. Without belaboring the point, when it comes to impacts and effects of crimes, the provision explicitly directs courts to fashion sentences that are consistent with the protection of the public and the impact on both the life of the victim and on the community. Notably, appellee addresses Section 9721(b) in his brief, but he focuses only on its "impact on the life of the victim" language, retaining his Crime Victims Act argument (an argument he did not present to the trial court). Appellee does not address the broader focus of the provision making relevant the impact on the community and the protection of the public. We believe there is merit in PDAA's construction of Section 9721(b) as an indication the General Assembly "has recognized that criminal law exists to protect not only direct victims, but also the community that bears the indirect consequences of crime," and this, in turn, affords some flexibility in the trial court considering the practical and tangential effects of a crime in fashioning a sentence.[4] PDAA Brief at 10.

---

[4] The dissent insists Section 9721(b) does not authorize the admission of evidence, but rather merely sets forth general principles for sentencing courts to consider at sentencing. Respectfully, this unduly narrow interpretation of statutory language that clearly and expressly directs the court to impose a sentence "consistent with" the gravity of the offense as it relates to the impact "on the community" yields the untenable consequence of requiring the court to consider the impact of the offense on the community, while at the same time prohibiting the court from exercising its discretion to hear evidence about that impact. We read the statute in accordance with its plain and unambiguous language to avoid such an absurd result. *See, e.g.*, 1 Pa.C.S. §1922(1) (continued…)

Perhaps a complicating factor here is the evidence deemed relevant by the trial court was posed as victim impact rather than "community impact" evidence. But, considerations of public protection and community impact presumably may be addressed in myriad ways.[5] The general community effects of illegal drug distribution are well-known, including effects (sometimes fatal) upon abusers, attendant property crimes by certain of those suffering from addiction, and violence associated with certain drugs or manners of distribution. The tragic fortuity here — the death of two at the hands of a driver impaired, to some extent, by an illegal narcotic — obviously is not present in all, or even in many, cases involving distribution of the involved drug.

However, the risk or danger of such consequent fortuities is present and where, as here, the crime in fact is logically connected to a community impact suffered by specific individuals, Section 9721(b) makes that impact or effect a relevant consideration at sentencing — whether the evidence is called "victim impact" or not, and regardless of whether the affected individuals would be deemed "victims" under the Crime Victims Act. Notably, such a reading of Section 9721(b) is consistent with the Superior Court decisions cited by the Commonwealth, such as *Curran*, 932 A.2d 103, *Griffin*, 804 A.2d 1, *Roden*, 730 A.2d 995, and *Penrod*, 578 A.2d 486.[6]

---

(…continued)
(in interpreting statutory language court may presume General Assembly did not intend absurd result).

[5] The dissent suggests our holding might be read to require admission of random victim impact statements from generic "other trials," Dissenting Slip Op. at 3, while ignoring the direct connection between appellee's crimes and the community impact evidence presented at his sentencing hearing. The sentencing court maintains discretion to determine admissibility, and we simply hold there was no abuse of that discretion here.

[6] The Superior Court's decision in *Smithton*, cited by appellee, is inapposite. Smithton was acquitted of the criminal trespass and Smithton's subsequent actions giving rise to his disorderly conduct and resisting arrest convictions had no logical impact upon the victims of the alleged criminal trespass; and Smithton having been acquitted of the (continued…)

Furthermore, as PDAA notes, in *Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988), this Court stressed the duty to fashion an appropriate, individualized sentence requires the trial court to balance considerations including the nature and circumstances of the crime, the effect on the community, and the defendant's circumstances and needs:

> Courts are not permitted to mete out punishment based on the mere fact of the crime. On the contrary, sentencing must result both from a consideration of the nature and circumstances of the crime as well as the character of the defendant. The sentencer has broad discretion to choose a penalty from sentencing alternatives and the range of permissible confinements, provided the choices are consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. Discretionary sentencing, in sum, means that a defendant cannot be punished on the basis of the crime alone.

*Id.* at 13. *See also Commonwealth v. Begley*, 780 A.2d 605, 643 (Pa. 2001) ("The trial court is vested with broad discretion in determining the defendant's sentence since the court is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime."), *citing Commonwealth v. Ward,* 568 A.2d 1242, 1243 (Pa. 1990).

Of course, the sentencing court must take a measured approach to community and indirect victim effects depending upon the level of attenuation between the crime and the proffered impact. Here, the court's comments at sentencing indicated its sensitivity to that attenuation. *See* N.T. 11/26/13 at 73 ("[T]he Court is not finding that you caused their death [sic] directly, but you certainly were connected to a series of

---

(…continued)
trespass, their testimony respecting the impact of that event upon their lives was not relevant. Here, appellee was convicted for his role in an enterprise that sold K2 to Harper and Crawford, who then smoked the K2 with Malloy, whose intoxication was a cause of the fatal crash. Although appellee was never charged with any crime arising from those deaths, the families of Witt and Crawford obviously were affected by the conduct, of which he was a part, contributing to Malloy's intoxication.

horrific events that led to unspeakable tragedy for the families that this Court had to listen to during the sentencing phase of [Malloy's] case. So I cannot turn a blind eye to it. It is simply a fact."). We hold the trial court had discretion to consider the proffered evidence, and we see no abuse of discretion in its consideration under these circumstances.[7]

Accordingly, we vacate the order of the Superior Court and remand for resentencing consistent with this opinion and the Superior Court's independent grounds for remand implicating the school zone and youth enhancements under the Sentencing Guidelines.

Chief Justice Saylor and Justice Todd join the opinion.

Justice Baer files a dissenting opinion.

Justices Donohue and Wecht did not participate in the consideration or decision of this case.

---

[7] The dissent does not "believe that anything in the law" directs our holding, Dissenting Slip Op. at 7-8, but that is surely not an extraordinary circumstance when this Court grants review in a matter of first impression. In any event, we do not agree that our decision lacks support in existing statutory or common law; as we have seen, Section 9721(b) explicitly states a sentencing court may consider the impact of the crime on the community when rendering a sentence. Furthermore, there is significant Superior Court case law affirming the admission of community impact evidence, as we have discussed *supra*. *See, e.g., Curran*, *Griffin*, *Roden* and *Penrod.* Finally, as we have stated, this Court has consistently held sentencing courts have broad discretion to consider the gravity of the offense and the overall effect and nature of the crime in fashioning an appropriate sentence. *See*, *e.g.*, *Begley* and *Devers.*