J-S80020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
ANTONIO MORENO   :
  :
Appellant   :   No. 2449 EDA 2017

Appeal from the Judgment of Sentence February 17, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003594-2016,
CP-51-CR-0008756-2014, CP-51-CR-0013838-2010

BEFORE:  BENDER, P.J.E., BOWES, J., and NICHOLS, J.

MEMORANDUM BY BOWES, J.:          **FILED JUNE 17, 2019**

Antonio Moreno appeals from the aggregate judgment of sentence of sixteen and one-half to thirty-three years of incarceration imposed in the above three cases.[1]  We affirm.

---

[1] Appellant filed a single notice of appeal captioned in all three cases.  This Court issued a rule to show cause why the appeals should not be quashed pursuant to Pa.R.A.P. 341 (indicating that separate notices of appeal must be filed at each docket when a single order resolves issues related to more than one judgment or docket).  Appellant responded, citing the facts that no co-defendant is involved, all three docket numbers were included on the notice of appeal, and that the issues arose at a single hearing.  Answer to Rule to Show Cause, 9/14/17, at ¶ 7.

Our Supreme Court made it clear in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), that  appellants are required to file separate notices of appeal at each docket number implicated by an order resolving issues that involve more than one trial court docket, regardless of whether a single hearing or order addressed the issues at all implicated dockets.  However, as the instant appeal predates *Walker*, and the Court indicated that *Walker* applies prospectively, we do not quash this appeal.

At case number 13838-2010 ("the 2010 case"), Appellant entered a guilty plea to possession with intent to deliver controlled substances ("PWID"), and received a county sentence followed by eight years of probation. He then pled guilty to PWID again at case number 8756-2014 ("the 2014 case"), for which he received a sentence of intermediate punishment and a probationary tail of three years.

> On February 1, 2016, while on . . . probation for the above-mentioned cases, [Appellant] met with Officer Cleaver of the Philadelphia Police Narcotics Field Unit, and sold the officer fourteen packets of heroin. The Narcotics Unit received [Appellant]'s phone number from Janice Matthews, whose son, Austin Sternberg, was found dead of a fentanyl overdose on January 28, 2016. Ms. Matthews went through her son's phone following his death, discovered that the last text messages he exchanged were with [Appellant] and appeared to be arranging for the purchase of narcotics, and contacted the police with that information. Following the February 1st sale, the police ran [Appellant]'s license plate and discovered that he resided at 2075 Monmouth Street. On February 2, 2016, Officer Cleaver received a text message from [Appellant] informing the officer that [Appellant]'s phone number had changed. On February 3, 2016, Officer Cleaver contacted [Appellant] at the new phone number, and arranged to make a sale. Officers observing 2075 Monmouth Street [saw Appellant] leave that residence and get into his car. [Appellant] then met with Officer Cleaver and sold him twenty five packets of alleged heroin. Testing revealed that sixteen of the packets contained heroin and nine contained fentanyl. On February 10 and February 15, 2016, Officer Cleaver again met with [Appellant] and purchased heroin. On February 16, 2017, Officer Cleaver arranged to meet with [Appellant], however, before the meeting took place, officers executed a search warrant of 2075 Monmouth Street and arrested [Appellant]. Officers recovered ten bundles of heroin, each containing fifteen packets, as well as $810.00, an ID card, and a probation card from [Appellant]. From inside the home officers recovered thirty two bundles of heroin and six bottles of crack cocaine.

Sentencing Court Opinion, 11/27/17, at 1-2 (citations omitted).

- 2 -

As a result of the sales to Officer Cleaver, Appellant was charged at case number 3594-2016 ("the 2016 case") with PWID and criminal use of a communications facility ("CUCF"), to which he pled guilty. Another consequence of the new PWID charge was the revocation of Appellant's probation in the 2010 and 2014 cases.

On February 17, 2017, the sentencing court sentenced Appellant in all three cases. In the 2016 case, Appellant received five to ten years of imprisonment for PWID, with a consecutive term of three and one-half to seven years of incarceration for CUCF. For the probation revocations, the court imposed consecutive sentences of four to eight years of imprisonment at each docket. As such, Appellant received an aggregate sentence of sixteen and one-half to thirty-three years of incarceration.

Appellant filed a timely motion for reconsideration of sentence. By orders dated March 6, 2017,[2] the sentencing court vacated Appellant's sentences in the 2010 and 2014 cases pending reconsideration.[3] The sentencing court thereafter denied the motion for reconsideration by orders

---

[2] The orders were not docketed until October 27, 2017, after this Court directed their entry.

[3] *See* Pa.R.Crim.P. 708(E) ("The filing of a motion to modify sentence will not toll the 30-day appeal period.").

filed in all three cases on June 28, 2017.[4]  Appellant filed a timely notice of appeal on July 28, 2017, and both Appellant and the sentencing court complied with Pa.R.A.P. 1925.

Appellant presents the following question for this Court's consideration:

> Should not the lower court's manifestly excessive aggregate total sentence of 16½ to 33 years [of] incarceration be vacated where the sentence imposed in [A]ppellant's 2016 case was far in excess of the guidelines, the sentences in each case were far in excess of the sentences requested by the prosecution, and the lower court based the sentences in each docket almost entirely on a crime for which [Appellant] was never charged, tried, or found guilty?

Appellant's brief at 2.

The following principles apply to our consideration of whether Appellant's question raises a viable challenge to the discretionary aspects of his sentence.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right.  Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction.  We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved

---

[4] Although the trial court did not expressly state its intent to re-impose the previously-vacated original sentences in the 2010 and 2014 cases in the June 28, 2017 order, such a ruling is implicit in the subsequent denial of Appellant's motion for reconsideration of those sentences.  Therefore, we treat the trial court's order denying Appellant's motion for reconsideration as vacating the prior order that had vacated the sentences, and deem the appealed-from sentences to have been imposed on the date they originally were announced in open court: February 17, 2017.  *Accord Commonwealth v. Nahavandian*, 954 A.2d 625, 630 (Pa.Super. 2008).

- 4 -

at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (citations omitted).

Appellant filed a timely notice of appeal and preserved the issue in a timely post-sentence motion seeking reconsideration of his sentence. Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Thus, we consider whether Appellant has raised a substantial question.

Appellant avers that his aggregate sentence is manifestly excessive and is based upon the sentencing court's consideration of an impermissible factor. Appellant's brief at 13. Appellant further complains that the sentencing court "focused solely on retribution, to the exclusion of other required statutory considerations[.]" *Id*.

We conclude that Appellant has raised a substantial question that the sentence is not appropriate under the sentencing code. *See*, *e.g.*, *Commonwealth v. Dodge*, 77 A.3d 1263, 1273 (Pa.Super. 2013) (holding claims that trial court failed to consider relevant sentencing criteria and relied upon impermissible sentencing factors presented substantial questions); *Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa.Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an

impermissible factor raises a substantial question."). Therefore, we shall proceed to address the merits of Appellant's claims.

We review the sentencing court's sentencing determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014).

Regarding Appellant's sentence in the 2016 case, we observe that, while a sentencing court has broad discretion, its

> discretion is not unfettered. When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines.

*Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa.Super. 2011) (cleaned up). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009).

As to sentencing following revocation of Appellant's probation in the 2010 and 2014 cases, the sentencing guidelines did not apply, and the court was "limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." *Commonwealth v.*

*Simmons*, 56 A.3d 1280, 1286-87 (Pa.Super. 2012) (internal quotation marks omitted). A sentence of total confinement may be imposed following probation revocation if the sentencing court finds, *inter alia*, that "the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned;" or that "such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S. § 9771(c)(2) and (3).

As detailed above, Appellant's conviction and sentence for PWID in the 2016 case was not related to the overdose death of Austin Sternberg. Yet, at the sentencing hearing, the sentencing court heard extensive testimony and received other evidence, such as identical drug packaging, that demonstrated that Mr. Sternberg had purchased the drugs that killed him from Appellant. The Commonwealth additionally presented evidence to show the extent of the opioid epidemic in the neighborhood where Appellant had conducted all of the drug sales at issue in these cases, and how people like Appellant are "out there on the streets of Philadelphia, profiting on the destructions of family lives." N.T. Sentencing, 2/17/17, at 35. The court also heard from Appellant and his witnesses that Appellant himself is a victim of substance abuse, that Appellant did not know that he was selling fentanyl rather than heroin, and that he only went back to selling drugs to provide for his children.

Upon hearing all of this information, as well as considering the sentencing guidelines and the presentence investigation report, the sentencing court imposed its sentence based upon the weight it gave to the

aggravating factors, the fact that Appellant "will continue to commit more crimes unless he is incarcerated[,]" and his lack of respect for the authority of the court in the face of prior "lenient sentences and treatment opportunities[.]" Trial Court Opinion, 11/27/17, at 8. Therefore, the sentencing court consciously deviated from the guidelines and imposed an aggregate sentence more than twice as long as that requested by the Commonwealth. N.T. Sentencing, 2/17/17, at 77.

Appellant contends that this was improper, arguing "the record makes abundantly clear that the lower court relied almost exclusively on the impermissible factor of the homicide [that] the lower court believed [Appellant] had committed when crafting the sentence in each of [Appellant]'s three cases." Appellant's brief at 20. Appellant notes that he did not admit to selling any drugs to Mr. Sternberg, that he did not waive his right to have a fact finder decide his *mens rea*, and that the evidence offered at the sentencing hearing was not sufficient to prove he committed a homicide. *Id*. at 24-25. Appellant suggests that, even if the circumstantial evidence did point to his having sold the fentanyl to Mr. Sternberg, there was no indication that Appellant knew it was fentanyl rather than heroin, and the sentencing court's "importing a theory of strict products liability" was improper. *Id*. at 24. Appellant maintains that "the alleged uncharged criminal conduct in this case [does not] show anything new about [Appellant]'s character or the potential danger he poses to society." *Id*. at 25.

Appellant argues that this Court's decision in **Commonwealth v. Rhodes**, 990 A.2d 732 (Pa.Super. 2009), requires that we find that the sentencing court abused its discretion in this case. In **Rhodes**, the defendant, who had no prior criminal record, initially reached an agreement with the Commonwealth to plead guilty to involuntary manslaughter in connection with the death of her newborn child, but the trial court refused to accept the plea. The parties then presented the court with an open plea to voluntary manslaughter, which the trial court accepted. Prior to sentencing, the trial court conducted an *ex parte* investigation into the circumstances of the child's death.

At the sentencing hearing, after the parties presented their arguments, the trial court provided counsel with a thirty-six page "Statement of Sentencing Rationale" which it had prepared and distributed to the media, but not to the defendant or the Commonwealth, before the sentencing hearing commenced. The court declined to recess the hearing to allow Rhodes and her counsel to read and respond to the document. Instead, the court discussed the statement on the record, revealing its conclusion, based upon hearsay from police reports, that the killing had not been the product of sudden and intense passion admitted by Rhodes pursuant to her guilty plea. Instead, the trial court detailed "an alternate recitation of the case, drawing unfavorable inferences against the defendant and fashioning a narrative of depravity and deceit indicative of a premeditated, calculated and intentional

killing." *Id*. at 740 (internal quotation marks omitted). The court "then concluded the hearing with a nod to the Sentencing Guidelines, but imposed a sentence . . . only one to two years shy of the statutory maximum[.]" *Id*. at 741. The trial court rejected the objections of defense counsel that the court issued a predetermined sentence, based upon evidence not of record and which the defense had not even seen, and had not given Rhodes the opportunity to cross-examine any of the people whose statement the court relied upon.

On appeal, this Court held that the trial court abused its discretion by relying upon impermissible considerations in that it "effectively convicted and sentenced the defendant for conduct and intent she had not admitted and could not prepare to address." *Id*. at 747. As we explained,

> The court's reliance on police reports it obtained *ex parte* is of particular concern, as [the trial judge] failed to afford Rhodes the opportunity to cross-examine the witnesses whose hearsay statements comprised the bulk of the reports' contents. He then drew factual inferences directly from those reports on the basis of which he imposed a sentence almost five times that recommended by the Commonwealth and only one to two years shy of the statutory maximum for voluntary manslaughter. The court then sought to buttress the sentence with the repeated assertion that its duration reflected Rhodes's commission of a calculated, premeditated killing, reflecting a finding of elements that define an offense with which Rhodes was not charged and to which she did not plead. Every such occurrence contravened accepted sentencing norms in this Commonwealth.

*Id*. at 745 (internal quotation marks and unnecessary capitalization omitted).

We agree with the Commonwealth that Rhodes is readily distinguished from the instant case. *See* Commonwealth's brief at 12-14. Here, the

sentencing court did not do an independent investigation to reach a sentencing decision prior to the hearing based upon evidence that Appellant had no opportunity to challenge. Rather, it considered the evidence offered at the sentencing hearing, including the presentence investigation report, and gave Appellant the opportunity to cross-examine witnesses and present his own evidence, before reaching its decision.

Furthermore, the sentencing court here did not punish a first-time offender based upon its determination that she was guilty of a crime other than that for which she was being sentenced as the court did in **Rhodes**. Instead, the sentencing court was tasked with fashioning three sentences for Appellant, who just had his fifth PWID conviction as an adult: one for each of two prior PWID convictions, and one for the current PWID committed while he was still under supervision for the other two. Relevant to its decisions, addressing Appellant's repeated criminal activity between 2010 and 2016, were the requirements of §§ 9721(b) and 9771(c) of the sentencing code. Those statutes provide, in relevant part, that "the sentence imposed should call for confinement that is consistent with **the protection of the public**, the gravity of the offense as it relates to the impact on the life of the victim and **on the community**, and the rehabilitative needs of the defendant[,]" 42 Pa.C.S. § 9721(b) (emphases added); and that total confinement may be imposed if "the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned." 42 Pa.C.S. § 9771(c).

Indeed, in **Commonwealth v. Ali**, 149 A.3d 29 (Pa. 2016), our Supreme Court expressly recognized that a trial court's consideration of the impact of a defendant's drug dealing on the community is an appropriate consideration under the sentencing code. The defendant in **Ali** operated a convenience store along with a partner, out of which they sold synthetic marijuana ("K2"). The operation was discovered by police who made an undercover buy and executed a search warrant after receiving information that a person who purchased K2 from the store operated an automobile while under the influence of the drug, killing two people.

Ali was convicted of PWID, conspiracy, corrupt organizations, and delivery of paraphernalia. Although Ali was not charged with or convicted of causing the deaths at issue, the trial court at sentencing allowed the Commonwealth to present evidence from the families of the victims of the car accident "to attempt to establish a causal relationship between the sale of K2 to [the driver responsible for the deaths] and the accident." **Id**. at 31. Specifically, the Commonwealth offered evidence that K2 from Ali's store was found in the car after the accident, that the driver smoked K2 before the accident, causing his heart to race and vision to become blurry, and that K2 is known to cause heart attacks and strokes, along with victim impact testimony from the driver's sentencing hearing. **Id**.

The trial court, while acknowledging that the evidence offered would not allow a jury to conclude that Ali directly caused the deaths, "determined that

- 12 -

it could not ignore the connection between the sale of the K2 and the fatal accident." *Id*. The trial court explained its reasoning as follows:

> [The deaths are] connected to what you do, Mr. Ali, exactly what you do. If you peddle death and dangerous substances, you can expect something like this to happen. This is within the purview of being a business owner. If you take the risk, you should expect it. . . .
>
> And when people buy something and go in the nature of convenience stores in this society, they do so by vehicle. They drive up and they drive away. And if you sell them something that can lead to their death, that can lead to them being impaired, then this is a consequence that should be readily known to you.
>
> . . . I believe you simply were operating for profit, you took a risk, and your risk ended up contributing, leading, being connected to, whatever you want to say—the Court is not finding that you caused their death[s] directly, but you certainly were connected to a series of horrific events that led to unspeakable tragedy for the families that this Court had to listen to during the sentencing phase of [the driver's] case. So I cannot turn a blind eye to it. It is simply a fact. And that was the tragic turn of events that now leads to your conviction and your sentencing.

*Id*. (internal quotation marks omitted).

On appeal, Ali contended that the trial court was not permitted to consider the victim impact evidence in sentencing him for the crimes at issue because, as they were not crimes against a person and thus had no legal victims, the evidence was irrelevant. This Court agreed, and held that the trial court erred in considering victim impact testimony where Ali was not charged with or convicted of any crime related to the two deaths.

Our Supreme Court reversed, largely based upon § 9721(b). The Court explained, "when it comes to impacts and effects of crimes, the provision

- 13 -

explicitly directs courts to fashion sentences that are consistent with the protection of the public and the impact on both the life of the victim and on the community." *Ali*, *supra* at 37. While Ali made arguments focused on the language concerning "the victim," he did not acknowledge "the broader focus of the provision making relevant the impact on the community and the protection of the public." *Id*. The Court accepted the position of an *amicus curiae* that, with § 9721(b), "the General Assembly has recognized that criminal law exists to protect not only direct victims, but also the community that bears the indirect consequences of crime, and this, in turn, affords some flexibility in the trial court considering the practical and tangential effects of a crime in fashioning a sentence." *Id*.

Specifically addressing the conduct and impact at issue in *Ali*, the Court stated as follows:

> Perhaps a complicating factor here is the evidence deemed relevant by the trial court was posed as victim impact rather than "community impact" evidence. But, considerations of public protection and community impact presumably may be addressed in myriad ways. The general community effects of illegal drug distribution are well-known, including effects (sometimes fatal) upon abusers, attendant property crimes by certain of those suffering from addiction, and violence associated with certain drugs or manners of distribution. The tragic fortuity here—the death of two at the hands of a driver impaired, to some extent, by an illegal narcotic—obviously is not present in all, or even in many, cases involving distribution of the involved drug.
>
> However, the risk or danger of such consequent fortuities is present and where, as here, the crime in fact is logically connected to a community impact suffered by specific individuals, section 9721(b) makes that impact or effect a relevant consideration at sentencing[.]

*Id*. at 38 (footnote and unnecessary capitalization omitted)

While *Ali* is not entirely on all fours with the instant case, we conclude that its reasoning supports the sentencing court's consideration of the overdose death of Mr. Sternberg at Appellant's sentencing hearing.[5] The Commonwealth presented evidence that connected Mr. Sternberg's death to Appellant's criminal activity through an assumption-of-risk logic accepted in *Ali*, which in turn was relevant to the court's evaluation of what sentences were appropriate to protect the public from Appellant and to rectify the impact of his drug dealing on the community. Further, the extent of the harm Appellant had caused through his continuing criminal activity properly informed the court's determination as to whether prior lenient punishment had been ineffective and a lengthy term of incarceration upon revocation of probation was necessary to vindicate its authority. As such, the sentencing court in this case did not consider any improper factors, but rather acted within its discretion in considering evidence relevant to the sentencing considerations established by our legislature.

Furthermore, we cannot conclude that the sentencing court committed an abuse of discretion in imposing an aggregate sentence of sixteen and one-half to thirty-three years of incarceration on the other bases argued by

---

[5] Appellant does not acknowledge the *Ali* decision in his brief, let alone attempt to distinguish the case.

Appellant. First, the fact that the sentencing court reviewed the presentence investigation report prepared for sentencing leads to the presumption "that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." ***Commonwealth v. Baker***, 72 A.3d 652, 663 (Pa.Super. 2013). Even so, the sentencing court did expressly acknowledge Appellant's mitigating evidence, but found that it was not "sufficient to overcome the aggravating factors in this case." Sentencing Court Opinion, 11/27/17, at 5. Thus, Appellant's claim that the sentencing court ignored all considerations but retribution is meritless.

Second, Appellant's repeated return to the same criminal conduct unquestionably supported the sentencing court's finding that lenient punishment was ineffective in rehabilitating Appellant, and that a lengthy period of incarceration was warranted to vindicate its authority. ***See***, ***e.g.***, ***Commonwealth v. Colon***, 102 A.3d 1033, 1045 (Pa.Super. 2014) (affirming sentence of four to twelve years of incarceration, imposed following probation revocation to protect the public and vindicate the authority of the court, where defendant with history of a history of substance abuse and mental health issues engaged in antisocial conduct while on probation following release from inpatient treatment). As such, we cannot agree that the sentence was manifestly excessive.

For all of the above reasons, we hold that Appellant failed to show "that the sentencing court ignored or misapplied the law, exercised its judgment for

reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Antidormi*, *supra* at 760. Therefore, he is entitled to no relief from this Court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/17/19