J-S26015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| ALPHONSO REED | |
| Appellant | No. 1708 MDA 2016 |

Appeal from the PCRA Order September 27, 2016
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001482-2011

BEFORE:  BOWES, DUBOW, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 22, 2017**

Alphonso Reed appeals from the September 27, 2016 order denying his PCRA petition.  We affirm in part, reverse in part, and remand this matter for resentencing.

The PCRA court ably set forth the following facts relevant to this appeal:

> On or about June 2, 2011, Detectives Ryan Mong ["Det. Mong"] and Adam Saul ["Det. Saul"] were conducting surveillance of an alleged drug sale between an unknown individual and an undercover officer, Sergeant Brett Hopkins ["Sgt. Hopkins"].  A confidential informant arranged for the undercover officer to meet an individual identified as Charles Holloway ["Holloway"].  After meeting Sgt. Hopkins, Holloway made a phone call and a short time later an unidentified individual came onto the scene.  Det. Mong described him as an older man with a graying beard.  This individual handed an item to Holloway who then turned and immediately handed a bag of crack cocaine to the undercover officer.  After the transaction

* Former Justice specially assigned to the Superior Court.

was complete, the [detectives] followed the individual on foot until they lost sight of him. That individual remained unknown and was identified in Lebanon County Detective Bureau Department Case Report 11-131-1 as merely "Juan Doe."

On or about August 19, 2011, at approximately 7:30 p.m., [Appellant] was walking along the 800 block of Chestnut Street, Lebanon, when Det.'s Mong and Saul drove by in an unmarked vehicle. Det. Mong recognized [Appellant] as the "Juan Doe" with the graying beard from the June 2, 2011 incident. Det. Mong and [Det.] Saul approached [Appellant] in order to determine his name. The Detectives had their badges in plain view and Det. Mong identified himself to [Appellant]. Det. Mong testified that he did not intend to arrest [Appellant] at that time. Det. Saul stood slightly behind Det. Mong during the interaction with [Appellant], close enough to hear the conversation and to assist Det. Mong if needed. Det. Mong asked [Appellant] for some identification. [Appellant] handed a Pennsylvania Identification Card to Det. Mong, who radioed the information to dispatch to determine if there were any outstanding warrants for [Appellant]. Det. Mong told [Appellant] that they had stopped him because they recognized him as a person who had sold drugs to an undercover officer. Det. Mong returned [Appellant's] identification. Dispatch notified Det. Mong that there were no outstanding warrants for [Appellant]. Det. Mong testified that he could not recall if he had returned [Appellant's] identification before stating that [Appellant] was stopped because of the sale of drugs.

Det. Mong asked [Appellant] if he had any drugs or weapons on his person. [Appellant] replied in the negative. Det. Mong then asked [Appellant] if he would consent to a search of his person. [Appellant] replied in the affirmative. This search produced thirteen (13) bags of crack cocaine, two cell phones, and money. After the search, [Appellant] was arrested and read his *Miranda* warnings. [Appellant] was charged as a result of the items found on him on August 19, 2011[,] as well as the sale of drugs to an undercover officer on June 2, 2011.

PCRA Court Opinion, 12/21/16, at 2-4.

Appellant filed an omnibus pre-trial motion seeking the suppression of the evidence recovered during the August 19, 2011 seizure and search, and dismissal of the charges arising therefrom, contending that the detectives illegally stopped him on the street. Following a hearing on the matter, the court granted Appellant's motion to suppress, finding that Appellant's consent was not voluntarily given. The court suppressed the evidence obtained as a result of the search of Appellant's person, and the charges arising from that incident were ultimately dismissed. After a bench trial, Appellant was found guilty of the charges stemming from his participation in the June 2, 2011 drug transaction with Sergeant Hopkins.

Appellant filed a timely notice of appeal to this Court challenging the sufficiency of the Commonwealth's evidence and arguing that the Court improperly weighed the evidence in the Commonwealth's favor. We affirmed Appellant's judgment of sentence, finding that his challenge to the weight of the evidence was waived since he failed to raise the issue before the trial court, and that the Commonwealth had adduced sufficient evidence to support his convictions. ***Commonwealth v. Reed***, 91 A.3d 1295 (Pa.Super. 2013) (unpublished memorandum).

On March 17, 2014, Appellant filed a *pro se* PCRA petition. Counsel was appointed. Appointed counsel then filed a series of amended PCRA petitions raising numerous challenges to the effectiveness of trial counsel, including allegations that trial counsel failed to preserve Appellant's

challenge to the weight of the evidence and failed to file an appeal with regards to his pre-trial motion. The PCRA court granted Appellant partial relief, reinstated his right to file a post-sentence motion and direct appeal, but limited Appellant's post-sentence claims to his challenge to the weight of the evidence and any issue stemming from his pre-trial motion. The court denied Appellant's subsequent post-sentence motion, and Appellant appealed to this Court. This Court reversed the PCRA court's ruling. We found that the court erred in reinstating Appellant's post-sentence motion and direct appeal rights *nunc pro tunc*, and remanded the case to the PCRA court directing it to consider Appellant's claims under the auspices of the PCRA. ***Commonwealth v. Reed***, 151 A.3d 1135 (Pa.Super. 2016) (unpublished memorandum).

On remand, the PCRA court denied Appellant's PCRA petition. Appellant filed a timely appeal, and complied with the court's order to file a Rule 1925(b) concise statement of matters complained of on appeal. The court filed its Rule 1925(a) opinion. This matter is now ready for our review.

Appellant presents five questions for our consideration:

1. Whether Trial Counsel was ineffective for failing to preserve Appellant's challenge to the weight of the evidence on direct appeal?

2. Whether Trial Counsel was ineffective for failing to preserve Appellant's challenge to the Court's partial denial of Appellant's Suppression Motion regarding the reasonable suspicions for the stop and the initial probable cause for the arrest of the Appellant on direct appeal?

- 4 -

3. Whether Trial Counsel was ineffective for failing to challenge the Court's imposition of a mandatory minimum sentence for Appellant's delivery of a controlled substance conviction under **Alleyne v. U.S.**[, 133 S.Ct. 2151 (2013)]?

4. Whether Trial Counsel was ineffective for failing to object to the lab reports at trial?

5. Whether Trial Counsel was ineffective for failing to properly impeach Sergeant Hopkins regarding the race of the Appellant by not calling [Detective] Saul to testify?

Appellant's brief at 4-5.

Our review of an order denying PCRA relief is limited to determining "whether the decision of the PCRA court is supported by the evidence of record and is free of legal error." **Commonwealth v. Melendez-Negron**, 123 A.3d 1087, 1090 (Pa.Super. 2015). We will not overturn the PCRA court's findings of fact "unless there is no support for [those] findings in the certified record." **Id**.

Appellant poses five challenges impugning the effectiveness of trial counsel. As discussed further *infra*, we find Appellant's third issue directly implicates the legality of his sentence, and thus, we will examine it separately under the appropriate rubric. As it concerns Appellant's first, second, fourth, and fifth claims, when we review a claim of ineffective assistance of counsel, "we begin with the presumption [that] counsel is effective." **Commonwealth v. Cousar**, 154 A.3d 287, 296 (Pa. 2017)

(citation omitted). In order to succeed on such a claim, an appellant must establish, by a preponderance of the evidence:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) appellant suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

*Id*. at 296-297. Finally, we are "not required to analyze the elements of an ineffectiveness claim in any particular order of priority; if a claim fails under any necessary element . . . the court may proceed to that element first." *Id*. at 297 (citation omitted).

First, Appellant alleges that trial counsel rendered ineffective assistance of counsel when he failed to preserve a challenge to the weight of the evidence for appellate review. He asserts that, had trial counsel pursued the issue, he would have been granted a new trial. In support of this position, Appellant highlights a variety of areas where the Commonwealth failed to establish elements of the crimes for which he was charged. For example, he notes that the Commonwealth did not present evidence establishing that he and Holloway were associates, that Holloway called Appellant to facilitate the drug buy, or that Appellant had delivered narcotics to Holloway. Appellant insists that the court should have credited his testimony that he was in New York City at the time of the undercover drug buy, and discredited testimony by the detectives indicating that Appellant

was involved in the transaction.  Further, he emphasizes the disparity in the initial investigative documents, which identified the unknown individual as "Juan Doe," suggesting that the suspect was of Hispanic origin, when Appellant is, in fact, a black man.  Thus, he concludes that, had trial counsel preserved his weight of the evidence claim for review, he would have been awarded a new trial.

The PCRA court determined that trial counsel presented a reasonable strategic basis for failing to pursue a weight claim, and that Appellant had not been prejudiced by that failure.  The court credited the testimony of trial counsel, Michael Bechtold, Esquire, who explained that, after discussing the issue with Appellant, they agreed that filing a post-sentence motion with the trial court would not be successful.  Trial counsel explained that Appellant arrived at this decision after he disclosed to Appellant that, since the judge is the trier of fact in a bench trial, challenging the weight of the evidence before the trial court would not likely succeed.

The PCRA court agreed with Attorney Bechtold's assessment, and found that, since the trial court "heard all of the facts and rendered a verdict based on those facts, it can be presumed that [the trial court] did not find that the evidence was contrary to the verdict."  PCRA Opinion, 12/12/16, at 9.  We find that trial counsel offered a reasonable basis for abandoning Appellant's weight claim.

We observe that "one of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Commonwealth v. Leatherby***, 116 A.3d 73, 82 (Pa.Super. 2015) (citation omitted). In order to succeed on such a claim, Appellant would have to prove that the verdict was "so contrary to the evidence that it shocks one's sense of justice[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014).

Under the circumstances of this case, a successful challenge to the weight of the evidence required Appellant to convince the judge, who served as trier of fact, that his own verdict was so contrary to the evidence that it shocked his sense of justice.[1] In light of this arduous standard, we find that Attorney Bechtold's decision to forego post-sentence review before the trial court was supported by his reasonable belief that such a challenge faced no realistic chance of success. Hence, Appellant is not entitled to relief.

_____

[1] It is also worth noting that the majority of Appellant's argument reads as a challenge to the sufficiency of the evidence, not the weight of the evidence, as he highlights numerous areas where he asserts that the Commonwealth failed to carry its burden of proof. Ignoring for a moment that this Court has previously determined that the Commonwealth proffered sufficient evidence to support Appellant's convictions, ***see Commonwealth v. Reed***, 91 A.3d 1295 (Pa.Super. 2013) (unpublished memorandum), such an argument is not in keeping with our standard of review. ***Commonwealth v. Diaz***, 152 A.3d 1040, 1046 (Pa.Super. 2016) (stating, "When a defendant challenges the weight of the evidence, he 'concedes that the evidence is sufficient to sustain the verdict[.]'").

Appellant's second issue alleges that trial counsel was ineffective for failing to appeal what he characterizes as the trial court's partial denial of his pre-trial motion to suppress. Appellant asserts that Detectives Mong and Saul lacked reasonable suspicion when they stopped and questioned him. He concedes that the trial court granted his motion to suppress. However, he notes that the court based its decision on the lack of voluntary consent to the search performed at that time, rather than on an alternative basis, namely, the unlawfulness of the stop itself.

Appellant confines his argument to the assertion that, if trial counsel had appealed that aspect of the court's ruling, then the lawfulness of his stop as a whole would have been assailed, and all the evidence arising therefrom, including evidence of his identity, would have been suppressed. Appellant argues that, without knowledge of his identity, the police could not have arrested him for the offenses arising in from the June 2, 2011 drug sale. Thus, he claims trial counsel rendered ineffective assistance of counsel when he failed to preserve a challenge to the trial court's supposed partial denial of his suppression motion. We find this argument lacks arguable merit.

Here, Appellant filed an omnibus pre-trial motion requesting the suppression of the evidence discovered during his encounter with Detectives Mong and Saul. Following a hearing on the matter, the trial court granted Appellant's motion to suppress and the charges arising from the illegal

search of Appellant's person were dismissed. Since Appellant's requested relief was granted by the trial court, trial counsel had no basis, and Appellant had no standing, to pursue an appeal. *See* Pa.R.A.P. 501; *Commonwealth v. Fitzpatrick*, 2017 PA Super 101 (Pa.Super. 2017) (noting "only an aggrieved party can appeal from an order entered by the lower court.").

Further, we have long held that a defendant's identity is not subject to suppression. Hence, assuming, *arguendo*, that this issue was properly before us, Appellant would not be entitled to relief. *See Commonwealth v. Santiago*, 2017 PA Super 116 (Pa.Super. 2017) at *13 (noting the distinction between evidence about identity, which is "potentially suppressible," and the suppression of identity itself, "a theory that has been expressly rejected," and holding, "[t]his distinction is the implicit and practical consequence of the rule that identity itself is never suppressible, while evidence about identity is."). As such, trial counsel was not ineffective for failing to appeal Appellant's pre-trial suppression motion.

Appellant's fourth issue assails trial counsel's decision to stipulate to the admission of a lab report which confirmed that the substance passed to Sergeant Hopkins was an illegal narcotic. Appellant's argument in this respect merely recites the test for establishing ineffectiveness and baldly postulates that counsel's failure to object to the lab report meets this burden. Appellant's only substantive assertion suggests that this argument has arguable merit since trial counsel's stipulation denied him the

- 10 -

opportunity to confront the author of the report at trial. He does not otherwise develop an argument contending that trial counsel lacked a reasonable basis or that he was prejudiced by this purported error. For example, in order to establish prejudice, Appellant only highlights "the jury's verdict and the penalties that followed such verdict." Appellant's brief at 43. Notwithstanding the fact that Appellant was convicted following a bench-trial, we find trial counsel had a reasonable basis for stipulating to the entry of the lab report.

During trial, the Commonwealth sought to enter into the record a lab report from the state police crime lab. N.T. Trial, 11/15/12, at 14. That report indicated that the substance provided to Sergeant Hopkins by Holloway and Appellant tested positive for cocaine. *Id*. The Commonwealth moved for admission, and trial counsel did not object. Thus, the court admitted the lab report into evidence. At the PCRA hearing, Attorney Bechtold explained his decision as follows:

> Prosecutor: As it relates to the lab report issue, you did stipulate to the lab results?
>
> Attorney Bechtold: That's correct.
>
> Prosecutor: You heard [Appellant's] allegations that you were ineffective for doing so. What was your reasoning for acting in that fashion?
>
> Attorney Bechtold: From day one when I met [Appellant], he maintained his innocence throughout even until today. He told me repeatedly he wasn't in Lebanon at the time of this incident. He was in the State of New York with some family or something

- 11 -

to that effect. So he repeatedly told me and asked me to argue on his behalf that he was not the person at the scene. So therefore the substance or what was being transferred or sold on this particular date was completely irrelevant. In fact, even the Judge alluded to in my own statement there, how it was a waste of argument and it weakened our other arguments and was something not in our defense.

Prosecutor: So did you see any point in bringing in the laboratory technicians to testify at trial?

Attorney Bechtold: No. I thought it would weaken our other arguments.

N.T. PCRA Hearing, 4/27/15, at 34-35.

We note that the PCRA court credited Attorney Bechtold's testimony, and his assertions are supported by the record. Appellant maintained throughout the course of his trial that he was not present in Lebanon at the time of the transaction. Rather, he testified that he had spent the week in New York visiting friends and family and working for his uncle. N.T. Trial, 11/15/12, at 125-134. Indeed, Appellant repeated this claim at his PCRA hearing, stating, "That's what I'm saying. I wasn't there at all. That is it in this case." N.T. PCRA Hearing, 4/27/15, at 12. Thus, whether the substance provided to Sergeant Hopkins was a narcotic was irrelevant to Appellant's defense. As such, we find Attorney Bechtold's stipulation to the lab report was based on a reasonable strategic maneuver intended to maintain the potency of his argument.

Appellant's fifth issue contends that trial counsel was ineffective for failing to impeach Sergeant Hopkins regarding Appellant's race as listed in

certain police reports. He emphasizes the discrepancy between early police reports describing the unknown individual who participated in the June 2, 2011 drug transaction as "Juan Doe," implying that Sergeant Hopkins suspected the unknown individual was of Hispanic origin, and reports created after Appellant's arrest which listed the suspect as a "black male." Although Appellant's argument is not clear on this point, he seems to be arguing that Detective Saul's testimony would have called into question whether he was involved in the drug transaction, and thus, that trial counsel was ineffective for failing to offer that testimony. We find that, even if Attorney Bechtold erred in failing to call Detective Saul, Appellant was not prejudiced.

As noted above, we previously affirmed Appellant's judgment of sentence, finding that his convictions were supported by sufficient evidence, *Commonwealth v. Reed*, 91 A.3d 1295 (Pa.Super. 2013) (unpublished memorandum), relying, in part, on Sergeant Hopkins' testimony that Appellant provided Holloway with the crack cocaine. *Id*. at *4. However, Sergeant Hopkins himself was aware of the discrepancies contained within some of the police reports:

> Defense Counsel: And you would agree with me that [Appellant] has been identified on there as being Juan Doe in virtually every single report that was processed in the transaction?
>
> Sergeant Hopkins: Yes, and I didn't prepare that because we didn't have his real name.

- 13 -

Defense Counsel: Did you speak with [Appellant] at all during the alleged transaction?

Sergeant Hopkins: No, I did not.

Defense Counsel: So you identified [Appellant] as being a Hispanic gentleman basically all the way up until the time that he is ultimately taken into custody almost three months – two to three months later, correct?

Sergeant Hopkins: Yes.

. . . .

Defense Counsel: That's my question, Sergeant Hopkins, is you prepared this [narrative] report – I'm gathering you prepared this report on the date or immediately after the date in question, June 2nd, correct?

Sergeant Hopkins: Pretty much.

Defense Counsel: And in that report, Sergeant Hopkins, you identified [Appellant] as being a black male, correct?

Sergeant Hopkins: He could pass for either.

N.T. Trial, 11/15/12, at 31-32. On re-direct examination, the sergeant discussed his difficulty in characterizing Appellant's race:

Prosecutor: And you would agree with me that [Appellant] could be classified as a light-skinned black male, am I correct?

Sergeant Hopkins: Yes, ma'am.

Prosecutor: You testified on cross[-examination] that he could be considered either Hispanic or [a] black male?

Sergeant Hopkins: Yes, I didn't hear him speak, so I couldn't tell what kind of dialect he had or accent.

*Id*. at 41.

- 14 -

In addition, Detective Mong testified at trial that he was the assigned surveillance officer for Sergeant Hopkins on June 2, 2011. *Id*. at 45. After the transaction concluded, Detective Mong followed Appellant, and at one point they crossed paths within two-feet of each other, providing the detective ample opportunity to observe Appellant's face. *Id*. at 47. Subsequently, while on surveillance detail on August 19, 2011, Detective Mong noticed Appellant walking down the street and immediately recognized him as the unidentified individual from the prior drug transaction. *Id*. at 50.

In light of the testimony provided at trial, it is clear that the trier-of-fact was well aware of the police officers' inability to accurately characterize the then-unknown suspect's race. It is less clear how Detective Saul's testimony would have called Sergeant Hopkins' testimony into question, and Appellant's argument does not illuminate that claim. Further, Sergeant Hopkins admitted the difficulty he had in identifying the drug courier, but provided a reasonable explanation for the discrepancy between the early and later reports.

Significantly, Detective Mong's testimony indicated that he was not relying on the description of the unknown suspect contained within any police report when he recognized Appellant on August 19, 2011. Rather, he remembered Appellant from his own observations on June 2, 2011. Therefore, even if Detective Saul were called to impeach Sergeant Hopkins, the trial court had sufficient evidence to find that Appellant participated in

the drug buy. **Reed**, **supra**. Hence, Appellant was not prejudiced by trial counsel's failure to offer Detective Saul's testimony, and no relief is warranted.

Finally, turning to Appellant's third issue, Appellant claims that trial counsel was ineffective for failing to object to the court's imposition of an illegal sentence. He posits that, pursuant to **Alleyne v. United States**, 133 S.Ct. 2151 (2013), his sentence was not lawful since the court imposed a school zone mandatory minimum sentence, pursuant to then-enacted 18 Pa.C.S. § 6317,[2] and a school zone enhancement without first determining beyond a reasonable doubt that the drug sale had occurred within a school zone. He alleges that trial counsel should have challenged his sentence in light of the holding in **Alleyne**. Although Appellant raises this claim under the auspices of a challenge to the effectiveness of trial counsel, at its heart, it contests the legality of his sentence. Thus, we analyze his claim according to the standard of review germane to such an allegation. **Commonwealth v. Mosley**, 114 A.3d 1072, 1087 (Pa.Super. 2015) (noting that application

_____

[2] Section 6317, which has been ruled unconstitutional, required imposition of a two-year mandatory minimum jail term for a possession with intent to deliver conviction pursuant to 35 P.S. § 780-113(a)(30), if "the possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school[.]" 18 Pa.C.S. § 6317 (held unconstitutional in **Commonwealth v. Hopkins**, 117 A.3d 247 (Pa.Super. 2015)). That statute stated that its provisions were not elements of the crime and were to be determined at sentencing by the court under a preponderance-of-the-evidence standard.

of mandatory minimum sentence raises illegal sentence concern, which may be treated *sua sponte* by this Court). For the following reasons, we find Appellant is entitled to relief.

A challenge to the legality of sentence raises a question of law, and thus, our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Blakney***, 152 A.3d 1053, 1054 (Pa.Super. 2016).

In ***Alleyne***, ***supra***, the United States Supreme Court held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." ***Alleyne***, ***supra*** at 2155. Pursuant to ***Alleyne***, a defendant has a constitutional right to have the finder-of-fact decide the existence of any fact, other than a prior conviction, beyond a reasonable doubt if that fact triggers application of a mandatory minimum sentence. Instantly, the distance calculation necessary for application of § 6317 was found by the sentencing court following a stipulation by the parties. Such a stipulation does not satisfy ***Alleyne***. ***Commonwealth v. Fennell***, 105 A.3d 13, 20 (Pa.Super. 2014) (rejecting argument that defendant's stipulation as to weight of drugs recovered satisfied mandate of ***Alleyne***); ***Melendez-Negron***, ***supra***.

Further, we observe that the trial court imposed Appellant's sentence on January 23, 2013. The Supreme Court decided the ***Alleyne*** decision on June 17, 2013. Appellant's judgment of sentence was not affirmed by this Court until November 25, 2013. ***Commonwealth v. Reed***, 91 A.3d 1295

- 17 -

(Pa.Super. 2013) (unpublished memorandum). As ***Alleyne*** was issued during the pendency of Appellant's direct appeal, it was applicable to his sentence. ***Commonwealth v. Newman***, 99 A.3d 86 (Pa.Super. 2014) (*en banc*); ***Commonwealth v. Riggle***, 119 A.3d 1058, 1064 (Pa.Super. 2015) (observing, "In [***Newman***], we noted that ***Alleyne*** will be applied to cases pending on direct appeal when ***Alleyne*** was issued."). Moreover, since Appellant raised this issue in a timely PCRA petition, he is entitled to be re-sentenced for his conviction for possession with intent to deliver without consideration of the mandatory minimum sentence contained within § 6317. ***Commonwealth v. Ruiz***, 131 A.3d 54 (Pa.Super. 2015) (reversing PCRA order and vacating judgment of sentence where petitioner raised ***Alleyne*** challenge in timely PCRA petition).[3] Therefore, having found the PCRA court erred in denying Appellant's claim arising pursuant to ***Alleyne***, we reverse the PCRA order in that regard and affirm in all other respects, vacate the judgment of sentence, and remand for resentencing consistent with this decision.

_____

[3] Appellant also levied a challenge to the trial court's application of a "school zone enhancement" to his sentence based on ***Alleyne***. This Court has previously found that ***Alleyne*** does not apply to sentencing enhancements which only direct a court to consider a different range of potential minimum sentences under the guidelines. ***Commonwealth v. Ali***, 112 A.3d 1210, 1226 (Pa.Super. 2015), *vacated and remanded on other grounds*, 149 A.3d 29 (Pa. 2016). Hence, that aspect of Appellant's sentence did not contravene ***Alleyne***.

Order affirmed in part and reversed in part. January 23, 2013 judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2017