J-S36037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
KYLE RICHARD ADAMS :
:
Appellant : No. 1903 MDA 2018

Appeal from the Judgment of Sentence Entered March 12, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001673-2017


BEFORE: PANELLA, P.J., SHOGAN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.: **FILED: JULY 23, 2019**

Kyle Richard Adams (Adams) appeals from the judgment of sentence of

20 to 40 years' incarceration and five years of probation imposed by the Court

of Common Pleas of Berks County (trial court) following his jury trial conviction

for third-degree homicide and related crimes. Adams challenges the

application of the deadly weapon enhancement (DWE) to his sentence and the

subject matter jurisdiction of the trial court. We affirm.

We adopt the trial court's recitation of the facts as set forth in its

Pa.R.A.P. 1925(a) opinion.

> On December 6, 2016, in the early morning hours, Joseph White
> was at his residence with [Adams] and Skyler Kerns. Mr. White
> received a Facebook message from Paul Cook stating that Donavin
> Yenser was at the Pagoda and that Mr. Cook was going to go up
> there. Mr. White and his friends had been looking for Mr. Yenser
> because they believed that he robbed and injured a friend of theirs
> named Nick Bintliff. Mr. White testified that he and [Adams], who
> were armed at the time with a baseball bat and a jack handle, had

---

\* Retired Senior Judge assigned to the Superior Court.

previously gone looking for Mr. Yenser, but that they were unable to find him.

Mr. White, Mr. Kerns, and [Adams] drove to the Pagoda in [Adams]'s silver, Volkswagen GTI. They again took along a baseball bat and a jack handle. After arriving at the Pagoda, they met up with Mr. Cook. [Adams] was carrying the baseball bat, and Mr. Kerns was carrying the jack handle. Mr. Cook took the jack handle from Mr. Kerns and ran toward a white GMC Yukon. [Adams] closely followed Mr. Cook and Mr. White and Mr. Kerns followed shortly thereafter.

Mr. Cook saw Mr. Yenser sitting behind the driver of the SUV. Mr. Cook broke the window of the vehicle by hitting it twice with the jack handle. As Mr. Yenser scooted over to the other side of the vehicle, Mr. Cook reached in and hit him in the arm with the jack handle. Mr. Yenser got out of the SUV, which then began to move. Mr. Cook pursued Mr. Yenser, who was running next to the SUV. At some point, Mr. Cook threw the jack handle at the rear of the Yukon.

Mr. Yenser attempted to get back into the moving vehicle, but Mr. Cook prevented him from doing so. Mr. Cook eventually grabbed Mr. Yenser from behind, and they both fell over a guardrail and down an embankment. After they got to their feet, Mr. Cook punched Mr. Yenser twice, knocking him to the ground. Mr. Cook then kicked Mr. Yenser in the face. Mr. Yenser was lying on the ground with his head tilted slightly to the left when [Adams] approached and hit him in the back of the head with the baseball bat.

Trial Court Opinion, 2/11/19, at 1-2.

Mr. Yenser died and Adams was convicted of Homicide in the third degree, Aggravated Assault, Conspiracy (Aggravated Assault), Possession of an Instrument of Crime, Simple Assault, and Conspiracy (Simple Assault). The trial court imposed a sentence of 20 to 40 years' incarceration at third-degree

homicide and five years of probation at Possession of an Instrument of Crime.[1]
Adams now appeals, claiming that: the DWE sentencing procedure is unconstitutional under *Alleyne v. United States*, 570 U.S. 99 (2013); application of the DWE is illogical as a matter of common sense; and that the trial court lacked subject matter jurisdiction.

## I.

Adams raises two challenges to his sentence, both of which concern the application of the DWE. The starting point for sentencing is calculation of the applicable guideline ranges. Normally, 204 Pa. Code. § 303.16(a), the Basic Sentencing Matrix, supplies the recommended sentence based on the offender's prior record score and the gravity score of the particular crime. The Sentencing Code contains various enhancements including, as found by the trial court here, the "Deadly Weapon Enhancement/Used Matrix." *See* 204 Pa.Code 303.17(b). For third-degree homicide, the recommended minimum sentence is increased by 18 months where the DWE applies.[2]

---

[1] Adams received a concurrent sentence of 72 to 144 months' incarceration at Conspiracy (Aggravated Assault).

[2] Calculation of the guidelines is considered a challenge to the discretionary aspects of sentence and such challenges are not appealable as of right. *Commonwealth v. Ali*, 112 A.3d 1210, 1226 (Pa. Super. 2015), *vacated on other grounds*, 149 A.3d 29 (Pa. 2016) (examining identical *Alleyne* claim as constituting challenge to discretionary aspects of sentencing). However, the discrete claim that the legislative procedure involving the DWE is an unconstitutional process is arguably a challenge to the legality of sentence, which would be appealable as of right and is subject to *de novo* review. *See*

The Sentencing Code contains the following definition for use of a deadly weapon. "An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual: . . . Any device, implement, or instrumentality capable of producing death or serious bodily injury." 204 Pa.Code 303.10(a)(2)(iii). Adams does not dispute that his use of the baseball bat qualifies as using a deadly weapon. Instead, his issues attack the process by which the DWE is applied.

## A.

The trial judge determines whether the DWE applies by a preponderance of the evidence standard. **See Commonwealth v. Ellis**, 700 A.2d 948, 959 (Pa. Super. 1997). And if the DWE applies, its enhanced range is mandatory in the sense the trial judge cannot ignore its applicability.[3] "The sentencing

---

**e.g. Commonwealth v. Lawrence**, 99 A.3d 116, 122 (Pa. Super. 2014) (noting that we have viewed challenges under the **Apprendi** line of cases, which includes **Alleyne**, as involving the legality of sentence when the legislative process is involved). As developed in the text *infra*, Adams' argument simply disagrees with **Ali**.

[3] This point largely becomes relevant only when the trial judge imposes a sentence below the guideline ranges and the Commonwealth appeals.

> To the extent that the application of the enhanced range is mandatory, the Commonwealth is correct. The trial court, however, maintains that the imposition of a sentence within the enhanced range is not mandatory because the guidelines are not mandatory. The trial court proposes that it retains the discretion to sentence outside the enhanced range, where the circumstances

court may not disregard [enhancements] in determining the appropriate guideline sentencing ranges." ***Commonwealth v. Cornish***, 589 A.2d 718, 720 (Pa. Super. 1991).

Adams argues that both aspects are constitutionally invalid in light of ***Alleyne***, which held that all facts which increase the mandatory minimum sentence must be submitted to the fact-finder and proved beyond a reasonable doubt. Adams asserts that ***Alleyne*** applies to the DWE because (1) its application is mandatory where it applies and (2) its application is decided by a judge beyond a reasonable doubt and was not submitted to the jury.

The trial court disagreed, citing and quoting ***Commonwealth v. Ali***, 112 A.3d 1210 (Pa. Super. 2015), *vacated on other grounds*, 149 A.3d 29 (Pa. 2016) in rejecting that argument. ***Ali*** states, in relevant part:

> ***Alleyne*** has no application to the sentencing enhancements at issue in this case. The parameters of ***Alleyne*** are limited to the imposition of mandatory minimum sentences, *i.e.,* where a legislature has prescribed a mandatory baseline sentence that a trial court must apply if certain conditions are met. The sentencing enhancements at issue impose no such floor. Rather, the enhancements only direct a sentencing court to consider a different range of **potential** minimum sentences, while preserving a trial court's discretion to fashion an individual sentence. By their very character, sentencing enhancements do not share the attributes of a mandatory minimum sentence that the Supreme

> compel a different sentence; and the sentence which is imposed is subject to review only as to whether that sentence is reasonable. We agree.

***Commonwealth v. Jones***, 640 A.2d 914, 917–18 (Pa. Super. 1994).

Court held to be elements of the offense that must be submitted to a jury. The enhancements do not bind a trial court to any particular sentencing floor, nor do they compel a trial court in any given case to impose a sentence higher than the court believes is warranted. They require only that a court consider a higher range of possible minimum sentences. Even then, the trial court need not sentence within that range; the court only must consider it. Thus, even though the triggering facts must be found by the judge and not the jury—which is one of the elements of an *Apprendi* or *Alleyne* analysis—the enhancements that the trial court applied in this case are not unconstitutional under *Alleyne.*

*Id*. at 1126 (emphasis in original).

Against this authority, Adams argues: "But the Lower Court's opinion and the *Ali* Court's holding are not really true." Adams' Brief at 12. He continues:

The Lower Court indicates that the deadly weapon used enhancement is not mandatory, but many cases, including those sited [*sic*] by the Lower Court indicate that **the sentencing enhancement is MANDATORY**. For example, a sentencing court does not have the discretion to refuse to apply a deadly weapon enhancement. *Commonwealth v. Peer*, 684 A.2d 1077, 1084 (Pa.Super. 1996). And, the DWE provision of the Sentencing Guidelines provides that when the court determines that the defendant possessed a deadly weapon during the commission of a criminal offense, the court **MUST** add at least 12 months and up to 24 months to the guideline sentence that would otherwise have been applicable. See 204 Pa.Code §§ 303.10(a); 303.17(b); *Commonwealth v. Buter[b]augh*, 91 A.3d 1247 (Pa. Super. 2014).

Appellant further asserts that, because the sentencing guideline ranges are intended to, and usually do, exert a controlling influence on the sentence that the court will impose, a statutorily mandated increase in the guidelines where a particular fact is alleged creates a significant risk that a defendant will receive a higher sentence and therefore implicates the consideration of *Alleyne v. U.S.*, 133 S.Ct. 2151 (2013).

Adams' Brief at 13 (emphases and capitalization in original).

- 6 -

The above simply disagrees with *Ali*'s analysis of *Alleyne* and this Court has no authority to overrule another decision of this Court. *See Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006). Moreover, *Alleyne* itself rejects his premise. "Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Alleyne*, 570 U.S. at 116. *See also United States v. Booker*, 543 U.S. 220, 233 (2005) ("For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.").

The only other argument against *Ali* is a citation to *Peugh v. United States*, 569 U.S. 530 (2013), a case decided one week prior to *Alleyne*. *Peugh* holds only that the *Ex Post Facto* Clause of the United States Constitution is violated when a sentencing judge applies sentencing guidelines in effect at the time of sentencing instead of when the crime occurred. "A retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation." *Id*. at 544. Adams does not explain how this *Ex Post Facto* Clause analysis pertains to the Sixth Amendment challenge at issue here.

The **applicability** of the DWE guidelines is mandatory and it doubtlessly creates the risk of a higher sentence. But its **application** is not mandatory

as the trial judge retains the ability to depart from it. That distinction removes the DWE from the Sixth Amendment right to a jury trial analyzed in *Alleyne* and this claim fails.

**B.**

Adams' second challenge to the DWE is that it should not apply to homicides.

> The Lower Court cites *Commonwealth v. Brown*, 609 A.2d 1352, 1357 (Pa.Super.) which explains that the purpose of the deadly weapon enhancement is to deter the dangerous and intimidating use of deadly weapons by person in the perpetration of crimes and to lengthen the periods of incarceration for those who use such weapons. But the whole reason for deterring the "dangerous...use of deadly weapons" is because of one thing: THE DANGER. The danger that people could be seriously hurt or even killed. In a murder case a person is killed. Death is the ultimate danger. Not death by use of an instrumentality.
>
> To apply the *Brown* reasoning literally to a homicide case is absurd. What makes the use of a deadly weapon aggravating in other types of cases is the increased risk of the ultimate harm: death. In Murder of the Third Degree death itself is an element, and the offense is not one whit more serious because a deadly weapon was used. The hold otherwise is to hold that murders which make no use of a weapon are somehow less serious than murders which do. That is a stupid idea.

Adams' Brief at 15-16 (capitalization in original).

This is a policy argument that does not even attempt to incorporate a legal component. To the extent this Court could somehow entertain a challenge that the DWE should not apply, we note that the Legislature specifically excluded its application to a number of crimes. "There shall be no Deadly Weapon Enhancement for the following offenses: . . . . ". 204 Pa.Code

§ 303.10(a)(3). Homicide is not among them. We cannot ignore the clear statutory text simply because Adams thinks the Legislature should have added Homicide to the list. Having presented nothing except a complaint, this argument affords no relief.

## II.

Adams' remaining argument is that the court lacked jurisdiction to decide this case. Adams asserts that no witness directly testified to the crime having occurred within Berks County. The Commonwealth responds that all courts of common pleas have subject matter jurisdiction for crimes committed in Pennsylvania, and that Adams' argument is actually directed towards venue. In any event, the Commonwealth summarizes the testimony of several eyewitnesses who inferentially established that the murder occurred within Berks County.

In *Commonwealth v. Bethea*, 828 A.2d 1066 (Pa. 2003), Bethea committed crimes in Cumberland County but was prosecuted, "for some reason, not openly revealed on this record," in Franklin County. *Id*. at 1076. Bethea examined a claim of ineffective assistance of trial counsel for failing to challenge venue, which this Court then framed as a failure to make a jurisdictional challenge. *Id*. at 1070. Our Supreme Court explained:

> As the discussion above reveals, there remains some confusion regarding the concepts of venue and subject matter jurisdiction. The instant case presents us with another opportunity to explicate this confusion. **The initial step in this process is to clarify and expressly hold that all courts of common pleas have statewide subject matter jurisdiction in cases arising under**

> **the Crimes Code**. Thus, the Franklin County Court of Common Pleas does possess subject matter jurisdiction in this matter. Therefore, the proper focus of this appeal is upon the question of venue. Before addressing the venue issue on the merits, we believe it prudent to restate the primary distinctions between subject matter jurisdiction and venue.

*Id*. at 1074 (emphasis added).

Therefore, the trial court had subject matter jurisdiction to hear this case and Adams' claim goes to venue, which can be waived as the defendant must raise the issue. *See Commonwealth v. Gross*, 101 A.3d 28, 33 (Pa. 2014) ("[T]he Commonwealth should prove venue by a preponderance of the evidence once the defendant properly raises the issue.") (footnote omitted).

Finally, we note that the trial court effectively took judicial notice that Pagoda "is a landmark in the City of Reading." Trial Court Opinion, 2/11/19, at 6. Relatedly, Adams fails to cite a case in which subject matter jurisdiction is examined when the Commonwealth failed to present a witness who explicitly stated that the crime in question occurred within the territorial bounds of the court. We fail to see why a *de novo* inquiry with a plenary scope of review, as urged here by Adams, Adams' Brief at 17, would not include acknowledgement of the fact that the murder actually occurred in Berks County. Pennsylvania Rule of Evidence 201 permits the trial judge to take judicial notice of Pagoda's location:

> **(a) Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.

**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:

(1) is generally known within the trial court's territorial jurisdiction; . . . .

Pa.R.E. 201. Adjudicative facts are defined as "facts about the events, persons and places relevant to the matter before the court," **Comment**, Pa.R.E. 201, and the court may take judicial notice at any stage of the proceedings. Pa.R.E. 201(d). Adams does not claim this fact is incorrect, only that it "does not appear in the record." Per Rule 201, this fact is of record by virtue of judicial notice. Hence, the subject matter jurisdiction is meritless in any case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/2019