J-A11037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT SCOTT HUSNER | : | |
| | : | |
| Appellant | : | No. 660 WDA 2020 |

Appeal from the Judgment of Sentence Entered May 28, 2020
In the Court of Common Pleas of Greene County Criminal Division at
No(s): CP-30-CR-0000030-2018

BEFORE: McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED: JUNE 21, 2021**

Robert Scott Husner (Appellant) appeals from the judgment of sentence entered in the Greene County Court of Common Pleas following his plea of *nolo contendere* to simple assault.[1] Appellant challenges the discretionary aspects of his sentence, arguing the trial court erred in admitting a victim-impact statement that was not signed, was not authenticated, was read aloud by another witness, and referred to charges that were withdrawn. We affirm.

---

[1] 18 Pa.C.S. § 2701(b)(2).

Appellant was previously in a relationship with J.A., who is the mother of N.L. (the Victim). The certified record indicates N.L. is autistic[2] and has "ADHD, ODD and mood disorder."[3] In December of 2016, when the Victim was 17 years old, he gave a forensic interview. He stated that when he was 12 years old, Appellant "raped him," in Appellant's bedroom when his mother was not home. Affidavit of Probable Cause, 1/2/18, Exh. to Criminal Complaint. In a subsequent interview with Waynesburg Police, N.L. described the "rape" as "penis to anus contact." ***Id.***

In January of 2018, a criminal complaint was filed, charging Appellant with two counts each of sexual assault and involuntary deviate sexual intercourse (IDSI) of a person less than 16 years of age.[4]

The case proceeded to a jury trial, where a mistrial was declared on November 27, 2018. According to Appellant, the mistrial was granted due to the Victim improperly testifying about an unrelated rape in Ohio.[5] Appellant's Brief at 20, 32.

---

[2] Main Narrative by Chief of Police Robert Toth, Exh. to Appellant's Motion, 11/5/18.

[3] N.T. Sentencing, 5/28/20, at 14.

[4] 18 Pa.C.S. §§ 3124.1, 3123(a)(7).

[5] The certified record on appeal does not indicate the reason for this mistrial.

A second jury trial likewise ended in a mistrial, on April 23, 2019. It appears that at that proceeding, a Commonwealth witness testified to evidence that the trial court had ruled was inadmissible — following the alleged rape in this case, the Victim, then 12 years old, requested diapers. We note the Victim had testified at both trials.

The case was scheduled for a third jury trial beginning March 4, 2020. On that date, the Commonwealth requested leave to amend the information to one count of simple assault, under 18 Pa.C.S. § 2701(a)(3) ("attempts by physical menace to put another in fear of imminent serious bodily injury"), to which Appellant pleaded *nolo contendere*. The count was graded as a misdemeanor of the first degree (M1). The trial court directed that a pre-sentence investigation report (PSI) be prepared.

On May 28, 2020, the trial court conducted a sentencing hearing. By agreement of the parties, the trial court amended the simple assault subsection from 2701(a)(3) to 2701(b)(2), purportedly "the same" provision (attempt by physical menace to put another in fear of imminent serious bodily injury), with different numbering, in effect at the time the offense was committed.[6] N.T. Sentencing, 5/28/20, at 3, 5. The offense remained graded as an M1. *Id.* at 5.

_____

[6] We note, however, the 2013 statutory amendments did not affect the numbering of the subsections. **See** Act 2013-118 (S.B. 28), P.L. 1198, § 1, *approved* Dec. 18, 2013, eff. Jan. 1, 2014. Both before and after the

At sentencing, the Commonwealth called Greene County Probation and Parole Officer Lisa Hillsman, who interviewed Appellant and prepared the PSI. N.T. at 7. She testified that she believed Appellant would be amenable to supervision. *Id.* at 12.

The Victim, who had testified at both prior trials, did not attend the sentencing hearing. The Commonwealth called J.A., the Victim's mother, to read aloud most of the four-page victim impact statement provided by the Victim. J.A. stated the Victim was 12 or 13 years old when the underlying incident occurred. N.T. at 14. The Victim "can't comprehend things like normal children his age," is in "special classes" at school, is "[n]ot good" at reading and writing, and thus "needs assistance." *Id.* at 16-17. The Victim "is on medication for ADHD, ODD and mood disorder," does not "get along very well with others," and "is kind of like a loner." *Id.* at 14. The Victim did not attend the sentencing hearing because "he was afraid to come," and

---

amendment, the elements of "attempt[ing] by physical menace to put another in fear of imminent serious bodily injury" were set forth at Subsection 2701(a)(3). Meanwhile, Subsection 2701(b)(2), which set forth the grading, was amended. Prior to the amendment — and at the time of the underlying offense — Subsection 2701(b)(2) provided a simple assault offense was graded as a an M1 when committed "against a child under 12 years of age by **an adult 21 years** of age or older." *See* 18 Pa.C.S. § 2701(b)(2), 2002 (emphasis added). The 2013 amendment provided the M1 grading would apply when the offense was committed "by a **person 18 years** of age older." *See* 18 Pa.C.S. § 2701(b)(2), 2013 (present version) (emphasis added). This revision did not affect the grading in this case, as Appellant was over the age of 18 at the time of the offense.

because he had an "Abilify shot" that day, which "makes him sleepy." *Id.* at 17. The victim impact statement was typed by the Victim's therapist. *Id.* The trial court stated it had not read the statement. *Id.* at 9; Trial Ct. Op., 8/27/20, at 5.

Appellant objected to the victim impact statement repeatedly throughout the hearing, arguing, *inter alia*, the statement was not signed, was not dated, was improperly prepared with the assistance of a counselor, and, as we discuss *infra*, referred to the sexual offense charges that were withdrawn. *See id.* at 9-10, 19-21, 23, 25, 27. Appellant also objected to the statement being read aloud by someone other than the Victim. *Id.* at 18. The court responded to each objection and permitted both the admission of the statement and the reading of it by J.A. on the record.

Because Appellant's sole issue on appeal pertains to the victim impact statement, we reproduce the entirety of the portions that J.A. read aloud:

> My name is [N.L.] Because of my mental and emotional state, I had to ask my counselor and my mom to help me with writing my victim[ ] impact statement. I would like my mom or grandmother to read my victim impact statement at [Appellant's] sentencing.
>
> I live with my mother, I am 20 years old. I'm on disability, and I have been since I was 6 years old because I couldn't sit still in school, I was very hyper. When I was a kid, I was diagnosed with ADHD. I was placed on medication to help. When [Appellant] raped me, my sister and I was living with my grandparents . . .

* * *[7]

. . . and my dad in Greensboro. My parents were separated. My sister and I would visit and have overnight visits with our mom per Court order. My mom lived with [Appellant] in an apartment beside the Community Bank. I really didn't like [Appellant] at first, but then he would play games and I enjoyed played with me and others [sic]. There was a lot of drinking and parties.

[Appellant] and my mom would argue and fight a lot. Then it got to where he would joke around hitting me and touching me and others [. . .]

* * *

. . . in our dick[s]. The drinking, joking, hitting and touching made me feel very uncomfortable when I was around him. Everyone knew he liked guys, but he was with my mom. Everyone called [Appellant] gay. I told him to stop hitting and touching me . . .

* * *

. . . . there, but he never stopped. It was a normal thing that I witnessed him doing to other kids and adults joking around about it. In June 2011, I was 12 years old, maybe in 6th grade, when [Appellant] raped me. My mom had to leave for work or something, and I was left in the apartment with [Appellant]. I was playing my video games online, it was getting late. I was getting tired, I dozed off. I woke up because I felt somebody pulling on my shoulders, and I looked back and it was [Appellant], and his private area was in my butt.[8]

I tried pushing him off and away, and he wouldn't let go. I kept trying to fight him off and couldn't. When he was done, he

---

[7] The asterisks in our extended quotation of the trial transcript indicate where Appellant objected. For ease of review, we discuss these objections and the trial court's rulings separately, *infra*.

[8] Although J.A. read aloud "his private area was in my butt," N.T. at 22, the victim impact statement stated "his dick was up my ass." *See* Victim Impact Statement (unpaginated).

said don't say a word about anything, or he would hurt me and do it again. I didn't tell anyone because I was very angry, mad, sad, hurt, an emotional wreck, and I was afraid he would hurt my mom and would do it again to me. I stopped . . . going to visit my mom and made all kinds of excuses why I . . . didn't want to visit.

My mom was always at [Appellant's], and I didn't want to go there. I would only go with my mom when we went to somewhere like Kennywood Park or other family functions, because I was afraid. I started to have nightmares and flashbacks, would ask my aunt and others to buy me diapers. Any time during the day or night, I would have flashbacks about what [Appellant] did to me, I would go to the bathroom, do my business in the diaper.

Before I was raped by [Appellant], I was in regular school. I had some special education services.

N.T. at 19-23.

At this juncture, Appellant objected again. While the trial court overruled the objection, the Commonwealth requested J.A. to skip ahead in the victim impact statement to read the last page. N.T. at 23-24. J.A. read:

I do not agree that the sexual assault charges should be dropped. I would like justice.

\* \* \*

I only agreed with . . . what the DA told my mom because of how I was asked by [Appellant's] attorney how it felt to have a dick in my ass. I do not want to keep going through that again because all it does is make me feel more angry, sad, hurt, dirty and ashamed. I'm tired of the nightmares, flashbacks, and reliving the rape. Every time that the rape is brought up, it's like me being raped again and again. I want a chance —

\* \* \*

. . . to move on with my life. I am told because of the rape that I am stuck in a safe age, when I was a little boy around two years old. That's why I . . . rely on diapers. Hopefully a counselor will help me heal, and . . . can teach me to cope without using diapers

and help me process the phase that sexual rape patients must deal with to heal and have a fairly normal life.

Your Honor, I do not like that he is only getting assault charges. I ask that you give [Appellant] the maximum sentence that can be given and order [Appellant] to stay away from me and not be anywhere that I am.

N.T. at 25, 27-28.

As stated above, Appellant repeatedly objected throughout the reading of the victim impact statement. The trial court overruled each objection, first accepting J.A.'s sworn testimony that the statement was Victim's statement. *See id.* at 24. The court also reasoned the law permitted a victim to provide a statement and describe how the offense has affected their life. *Id.* at 21. Appellant argued he would "now to have to litigate crimes that he was not convicted of," and that the references to the sexual offenses were prejudicial. *Id.* at 24-25. The trial court responded: it understood that the victim does not determine the offenses of which a defendant should be found guilty; here, it was the Commonwealth who agreed to accept the plea entered by Appellant; the court understood Appellant only pleaded to simple assault; and the court could "sift through [the victim impact statement] and see what is appropriate to sentencing and what isn't." *Id.* at 24, 26. Finally, the trial court found the statement was admissible under 42 Pa.C.S. § 9738 ("Victim impact statements," discussed *infra*). *See id.* at 24.

Appellant then presented the testimony of the following witnesses at the sentencing hearing. A store owner testified that Appellant worked at her

store, performed errands for her, and "has been around" her family and children for at least five years.[9]  N.T. at 30.  She relied on Appellant and requested "leniency" and probation for him.  *Id.*  A 17-year old boy, whose father was friends with Appellant, testified he has "stayed at [Appellant's] house for a while," has "went fishing and kayaking" with Appellant, and Appellant "has been good to us [sic]."  *Id.* at 32, 33.  Appellant described this witness was "like [his] adopted son."  *Id.* at 39.

Appellant's ex-wife testified they co-parent three children together — aged 17 through 22 — and Appellant helps her around the house and has been a confidant for personal issues she has had.  N.T. at 35.  Appellant's father's paramour testified.  She stated Appellant, who was "like [her] stepson," has helped her and Appellant's father, as well as the community, family, and friends.  *Id.* at 36-37.  She also requested leniency and probation for Appellant.  *Id.*

Finally, Appellant testified.  He requested a sentence of probation or house arrest, stating he received "SSD, [works] at 5 Kidz, and [is] an officer at the Waynesburg Eagles," for whom he does charity work.  N.T. at 39-40.

---

[9] This witness appeared at the hearing *via* telephone.  N.T. at 29.

Appellant also stated that while he was on probation, he "never got violated,"[10] and he has not "been in trouble since this [incident] occurred." *Id.* at 48-49.

The standard range sentence for Appellant's conviction was restorative-sanctions to three months' imprisonment, with a maximum sentence of 60 months. N.T. at 47. The Commonwealth requested a sentence of incarceration. *Id.*

The trial court imposed a sentence of 90 days to 23½ months' imprisonment. The court stated it considered the testimony of both the Commonwealth's and Appellant's witnesses. N.T. at 49.

Appellant filed a timely post-sentence motion, arguing the trial court improperly admitted and considered the victim impact statement, and requesting his sentence be modified to, *inter alia*, probation or house arrest. The trial court denied the motion on June 8, 2020, and Appellant took this timely appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant presents the following issue for our review:

> At the sentencing on a simple assault, where [Appellant] presented substantial mitigation evidence, did the sentencing court abuse its discretion in considering an unsigned, undated statement written by an unknown author and read by the ex-girlfriend of [A]ppellant and the mother of the victim which contains scandalous and impertinent allegations that were denied

---

[10] According to Appellant, he has a 2008 conviction for simple assault, was sentenced to one to 23½ months' imprisonment, and "was paroled and supervised without any incident." Appellant's Brief at 14.

by [A]ppellant, nolle prossed by the Commonwealth, otherwise uncharged, and the basis for two prior mistrials in the case resulting in a sentence of incarceration at the top of the standard range of sentence?

Appellant's Brief at 11.

Appellant avers the trial "court abused its discretion in imposing a sentence at the top of the standard range for a simple assault after considering a purported victim impact statement that detailed charges that were nolle prossed." Appellant's Brief at 26. He presents numerous discrete arguments. We first consider his two main challenges.

First, Appellant challenges the admission of the victim impact statement. In support, he asserts: the author of the victim impact statement "was not established on the record;" the statement was not signed, not verified, and "may have been authored by an unnamed counselor who did not acknowledge the statement;" the statement was "highly prejudicial," "contain[ed] hearsay within hearsay within hearsay," and "propound[ed] expert medical diagnosis mental and physical conditions [sic] that" related to offenses withdrawn by the Commonwealth. *Id.* at 27, 30. Appellant also challenges the court's allowing J.A. to read aloud the statement, arguing "[t]he unknown therapist author could not be examined on the stand[,]" "[t]here was no verification from any therapist . . . that the [Victim] was incompetent or unable to present his own statement[,]" and there was no explanation why the Victim, who twice previously testified at trial, could not appear at sentencing. *Id.* at 31.

Second, Appellant emphasizes the victim impact statement improperly referred to sexual offenses that were withdrawn. He contends the statement did not relate to the simple assault conviction, but instead was "a slanderous recitation of alleged crimes that were not proven by the Commonwealth[ and] to which [Appellant] did not plead." Appellant's Brief at 31. Appellant also alleges the victim impact statement improperly referred to an unrelated rape in Ohio, as well as the Victim's request for diapers following the underlying rape. *Id.* at 32-33. He reasons that prior references to these two events were the bases of the two mistrials granted. We conclude no relief is due.

Appellant's claim that the trial court improperly considered the victim impact statement goes to the discretionary aspects of sentencing. We first note:

> Such a challenge is not appealable as of right. Rather, Appellant must petition for allowance of appeal pursuant to 42 Pa.C.S.[ ] § 9781. When an Appellant challenges a discretionary aspect of sentencing, we must conduct a four-part analysis before we reach the merits of the Appellant's claim. In this analysis, we must determine: (1) whether the present appeal is timely; (2) whether the issue raised on appeal was properly preserved; (3) whether Appellant has filed a statement pursuant to Pa.R.A.P. 2119(f); and (4) whether Appellant has raised a substantial question that his sentence is not appropriate under the Sentencing Code.

> \* \* \*

> A substantial question will be found where the defendant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process.

***Commonwealth v. King***, 182 A.3d 449, 453-54 (Pa. Super. 2018) (citations omitted). A claim that a sentencing court relied on improper factors raises a substantial question. ***Id.*** at 454.

Here, Appellant properly preserved his sentencing claim, by timely objecting at the sentencing hearing and including the issue in his post-sentence motion. Appellant has also filed a timely notice of appeal. His brief properly includes a Pa.R.A.P. 2119(f) statement. ***See*** Appellant's Brief at 26. Finally, his argument, that the trial court improperly relied on portions of the victim impact statement, raises a substantial question. ***See King***, 182 A.3d at 454. Thus, we may address the merits of Appellant's claims.

We note:

> The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. Merely erring in judgment is insufficient to constitute abuse of discretion. A court has only abused its discretion when "the record disclosed that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will."

***King***, 182 A.3d at 454 (citations omitted). Questions of credibility at sentencing "are for the trial court to resolve, not our appellate courts." ***Commonwealth v. Myers***, 722 A.2d 649, 651-52 (Pa. 1998).

We also consider the standard of review for the admissibility of evidence:

> "The admissibility of evidence, including victim impact evidence, rests with the sound discretion of the trial court." The conduct of a sentencing hearing differs from the trial of the case. To determine an appropriate penalty, the sentencing court may

consider any evidence it deems relevant. While due process applies, the sentencing court is neither bound by the same rules of evidence nor criminal procedure as it is in a criminal trial.

*King*, 182 A.3d at 455 (citations omitted).

The purpose of a victim impact statement is to allow victims of crime to inform the court of how the crime impacted their lives. In 1998, our General Assembly promulgated a Bill of Rights for crime victims which provides them the right:

> "to have opportunity to offer prior **comment on the sentencing** of a defendant . . . to include the submission of a written and oral victim impact statement **detailing the physical, psychological and economic effects of the crime on the victim and the victim's family**. The written statement shall be included in any predisposition or presentence report submitted to the court. Victim-impact statements shall be considered by a court when determining the . . . sentence of an adult."

18 P.S. § 11.201(5) (emphasis added).

The Supreme Court of the United States stated that the purpose of victim impact evidence is to show the victim's uniqueness as a human being and to illustrate that a particular individual's loss has a distinct effect on society. *Payne v. Tennessee*, 501 U.S. 808, 824 . . . (1991). Similarly, in Pennsylvania, this Court has emphasized that crime victims in the Commonwealth have the "right to breathe life with all its emotion into their victim impact statements."

*King*, 182 A.3d at 455 (some citations omitted).

In *King*, the trial court admitted, over the defendant's objection at sentencing, a letter from the deceased victim's wife. *King*, 182 A.3d at 453. The defendant had argued the letter "contained a personal attack on him, which [allegedly] exceeded the scope of what a victim impact statement may include." *Id.* On appeal to this Court, the defendant argued the trial court

- 14 -

erred in admitting the letter, and furthermore in considering the letter when rendering sentence. *Id.* at 454. This Court disagreed, pointing out

> the distinction between the admissibility of evidence and the weight of the evidence. In ruling on the objection at the sentencing hearing, the [trial] court noted "the writer of the letter is permitted to send a letter. Whether we take the substance of [the letter] into account at all would be [a] subject of discussion."

*Id.* at 455 (record citation omitted).

First, we disagree with Appellant's claim that the trial court erred in admitting the victim impact statement. J.A. testified the Victim was "[n]ot good" at reading and writing and needed assistance, and he did not attend sentencing that day because "he was afraid" and because his medication made him sleepy. N.T. at 16-17. The trial court accepted J.A.'s testimony that the victim impact statement was, in fact, the Victim's statement. *Id.* at 24. We do not disturb the court's credibility findings. *See Myers*, 722 A.2d at 651-52.

We also reject Appellant's bald claim that the trial court improperly considered references to the withdrawn sexual offense charges. His arguments on appeal improperly ignore the trial court's responses to his repeated arguments at sentencing. The court specified that it was aware Appellant pleaded *nolo contendere* only to simple assault, and it could "sift through" the statement for what was appropriate to sentencing. N.T. at 24, 26. The court further stated in its opinion:

> When [J.A.] was reading portions of her son's victim impact statement, the Court **was keenly aware that [Appellant] was**

- 15 -

**not before the Court on charges of sexual assault,**[ ] and the Court properly considered the victim impact statement, and did not place any undue weight on the statement.

Trial Ct. Op. at 8-9 (emphasis added). Appellant merely reiterates the arguments already presented to, and rejected by, the trial court, without appropriate discussion of the trial court's reasoning. Upon review of the record, we conclude the court also considered that "the law . . . broadly permits" a victim to discuss how the crime has "affected their life." ***See King***, 182 A.3d at 455; N.T. at 21. We decline to find the trial court relied on improper factors with respect to the victim impact statement. ***See Myers***, 722 A.2d at 651-52; ***King***, 182 A.3d at 455.

Finally, we briefly dispose of the additional claims presented by Appellant on appeal. He argues the trial court erred in relying on 42 Pa.C.S. § 9738. Appellant's Brief at 27, 29, *citing **Commonwealth v. Ali***, 149 A.3d 29 (Pa. 2016). Upon our review of the relevant discussion in ***Ali***, we agree with Appellant's summation of Section 9738. ***Ali*** stated: "By its plain terms, Section 9738 does not purport to address the admissibility of victim impact evidence, but merely operates to protect certain crime victims from being sequestered at trial based on the possibility they may later offer victim impact evidence." ***Ali***, 149 A.3d at 37. Nevertheless, we decline to find any reversible error, pursuant to our above discussion that the trial court properly admitted the victim impact statement and considered what was relevant to sentencing in the instant issue.

Appellant further alleges the victim impact statement improperly stated the sentence that the Victim desired for him — "to rot in jail," to "[p]ay all the doctor bills that the county has [paid] out," "to be listed on the sexual offender's registry," and "to be 6 foot in the ground, dead . . . or receive the death penalty serving the rest of his life in jail." **See** Appellant's Brief at 33; Victim Impact Statement at 4 (unpaginated). The certified record, however, does not indicate that the trial court heard this portion of the victim impact statement. As stated above, the trial court did not read the statement before sentencing, and J.A. did not read aloud the above passage. **See** N.T. at 19-23, 25, 27-28. Instead, the trial court only heard this statement: "I ask that you give [Appellant] the maximum sentence that can be given and order [Appellant] to stay away from me[.]" **Id.** at 28. We decline to find any abuse of discretion on the part of the trial court in this regard. **See King**, 182 A.3d at 454.

As none of Appellant's arguments merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/21/2021

- 17 -