J-S22036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
             :           PENNSYLVANIA
             :
       v.             :
             :
             :
SHIRLEY JEAN MOORE            :
             :
      Appellant        :    No. 383 EDA 2022

Appeal from the Judgment of Sentence Entered December 13, 2021
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0005369-2020

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:        **FILED DECEMBER 28, 2022**

Shirley Moore ("Moore") appeals from the judgment of sentence imposed following her convictions for, *inter alia*, theft by unlawful taking – movable property.[1] We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> [In] October [] 2020, police spoke with Sharon Hertz (hereinafter "Mrs. Hertz"), who was reporting a theft at her parents' home[,] located at 135 Lilac Lane in Chalfont Borough in Bucks County. Mrs. Hertz had hired a healthcare worker from Believe Home Health Care to come to her father's aide at his home at that location. Mrs. Hertz's father is Joseph Gebhardt[, who] is in hospice care in his room. He[ is] currently bedridden and utilizing the living room as his living area.
>
> Mrs. Hertz has a video surveillance system in her father's home[,] and she observed [on video] the health care worker, identified as [Moore], remove money from her father's wallet and

---

[1] *See* 18 Pa.C.S.A. § 3921(a).

place it in her pocket . . .. Police responded to the home and spoke with [Moore] [and] her supervisor, who had also been called to the scene by Mrs. Hertz.

Officer [Bryan] Pullar of Central Bucks Regional [Police Department] confronted [Moore] about the [theft]. She admitted she[ had committed] the theft[,] and she surrendered eight $ 1 bills she had taken from the wallet owned by [Gebhardt].

Mrs. Hertz called police again after the initial call and told officers that she had, then, gone back into the surveillance system[,] and she observed [Moore] stealing her father's handgun. [Moore] was also seen on videotape taking multiple items throughout the house on the same date, . . . includ[ing] jewelry, [a] jewelry box, wallets, binoculars, food and personal items such as talcum powder and cream.

Police asked Mrs. Hertz to formulate the cost of the items that she had determined was stolen. The amount was approximately $3,065. Later . . ., police went to the home of [Moore]. Police explained they were there to speak with her about the handgun she had taken . . .. [Moore] immediately started crying[ and] told police that she was sorry that she had taken the gun. Police asked her where the gun was[,] and she said she threw it in a lake[,] and then admitted that the gun was at someone else's property[,] and she would go get it for police.

Police asked her about other items she had stolen, specifically, the jewelry box and the items inside of it. [Moore] had told the police that she threw the jewelry box away and kept the jewelry. [Moore] came outside of her house and handed to police a bag of items and told police that she had taken those from the residence as well.

Police also asked [Moore] about the binoculars that were alleged to have been stolen. [Moore] handed those to police as well. Later, [Moore] told police that she would surrender the gun to police[,] but she did[ not] want to get anyone else in trouble. She then went to the Old Whiskey Tango Bar located in Philadelphia. Above that bar are apartments and a common bathroom.

In the hallway on the second floor was a backpack. [Moore] turned the backpack over to Detective Kolb, [and told him] the

gun was in the backpack. Located inside was a Colt .357 handgun belonging to [Gebhardt]. [Moore later] voluntarily came to Central Bucks Regional Police Department, turned over more items stolen from [Gebhardt], including more jewelry and small items. [Moore] admitted to st[e]aling those items and apologized at length for her actions.

[Moore, *pro se*, pleaded guilty on August 26, 2021 to, among other things, theft by unlawful taking – movable property, as noted above.] Th[e trial c]ourt deferred sentencing for 90 days and appointed the Bucks County Public Defender's Office to represent [Moore]. On December 13, 2021, th[e c]ourt[, after reviewing a presentence investigation report ("PSI") and hearing a recitation of the factual basis by the Commonwealth, testimony by Mrs. Hertz, and testimony by Moore followed by additional allocution, imposed a standard-range sentence of] no less than 21 months to no more than 48 months in a [s]tate [c]orrectional [f]acility and to a concurrent term of 60 months state probation [for the theft conviction]. . . . On December 20, 2021, [Moore] filed a motion for reconsideration of sentence, which th[e c]ourt denied on January 4, 2022. On January 28, 2022, [Moore timely] filed Notice of Appeal to the Superior Court.

Trial Court Opinion, 3/22/22, at 1-3 (internal citations, indentation, and unnecessary capitalization omitted). Both Moore and the trial court complied with Pa.R.A.P. 1925.

Moore raises the following issue for our review: "Whether the trial court abused its discretion by imposing a sentence in the standard range because it failed to consider mitigating factors, considered improper factors, and exceeded what is necess[a]ry to rehabilitate [Moore] and protect the public[?]" Moore's Brief at 4.

A challenge to the discretionary aspects of a sentence does not entitle an appellant to review as of right. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Rather, such a challenge must be considered a

- 3 -

petition for permission to appeal. *See Commonwealth v. Christman*, 225 A.3d 1104, 1107 (Pa. Super. 2019). Before reaching the merits of a discretionary sentencing issue,

> [w]e conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (internal citation and brackets omitted).

Here, Moore timely appealed her judgment of sentence and included a Rule 2119(f) statement in her brief. Moore also filed a timely post-sentence motion alleging the trial court imposed an excessive sentence, considered improper information at sentencing, and failed to consider her mitigating factors. *See* Motion for Reconsideration of Sentence, 12/20/21, at ¶¶ 5-9. Having determined that Moore preserved her issue for our review, we must next review her Rule 2119(f) statement to determine whether she has raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

In her Rule 2119(f) statement, Moore argues the trial court abused its discretion by imposing an excessive sentence that exceeds "what is necessary to protect the public and rehabilitate" Moore, failing to consider Moore's mitigating circumstances, and relying on "improper factors" in sentencing her.

Moore's Brief at 12.[2]  An assertion that a sentence was excessive and that the trial court failed to consider mitigating factors may present a substantial question.  *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015); *see also Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (stating that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question") (internal citation omitted).  An allegation that the trial court considered improper factors likewise raises a substantial question.  *See*, *e.g.*, *Commonwealth v. King*, 182 A.3d 449, 454 (Pa. Super. 2018).  We therefore grant Moore permission to appeal the discretionary aspects of her sentence and proceed to review the issue on its merits.

In reviewing Moore's discretionary sentencing claim, we are mindful of the following principles:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

---

[2] Moore also maintains in her Rule 2119(f) statement that the trial court failed to state on the record its reasons for the sentence.  *See* Moore's Brief at 12. However, Moore does not pursue this allegation in the argument section of her brief, and as noted below, the record contradicts it.  *See*, *e.g.*, *Commonwealth. v. Snyder*, 870 A.2d 336, 342 (Pa. Super. 2005) (stating, "Undeveloped claims are waived") (internal citation omitted).

*Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009) (internal citation omitted). Further, "where the sentencing court imposed a standard-range sentence with the benefit of a [PSI], we will not consider the sentence excessive." *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011); *see also Moury*, 992 A.2d at 171 (stating that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code"). Under such circumstances, "we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Corley*, 31 A.3d at 298 (internal citation omitted). Further, we may not re-weigh the sentencing factors simply because the trial court did not weigh the mitigating factors as a defendant would have liked. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009). Finally, a sentencing court "must take a measured approach to **community and indirect victim effects** depending upon the level of attenuation between the crime and the proffered impact." *Commonwealth v. Ali*, 149 A.3d 29, 39 (Pa. 2016) (emphasis added); *accord* 42 Pa.C.S.A. § 9721(b) (providing that the trial court is to consider at sentencing, *inter alia*, "the impact on the life of the victim and on the community . . ..").

Moore contends the trial court abused its discretion by failing to consider and give "proper weight" to her mitigating evidence, including her "age,

limited criminal history, or work experience," as well as her "remorse or her cooperation after her arrest." Moore's Brief at 13. Moore also argues the trial court should not have considered Mrs. Hertz's testimony at the sentencing hearing because the testimony "focused almost entirely on how she was personally impacted by this incident." *Id*. at 14. Moore maintains that her sentence is unreasonable "[b]ased on the testimony presented at [the] sentencing [hearing] . . .." *Id*. at 14.

The trial court considered Moore's argument and concluded it was meritless. As the court explained:

> [Gebhardt], a Korean War veteran, hired [Moore] to be his caregiver – she was trusted by [Gebhardt] and his family to help him in his final days. Yet, [Moore] took advantage of [him] when he was most vulnerable and stole not only valuable items, but also sentimental items such as [his] late-wife's jewelry. While th[e c]ourt did consider [Moore's] cooperation after being confronted by police, it noted that [she] only cooperated after she was caught[,] and she repeatedly attempted to minimize the situation. For example, [Moore] did not immediately turn over all of the stolen items, she waited for police to specifically ask for each one before admitting it was in her possession. [Moore] claimed that she stole the items because she fell on hard times. Yet, she did not sell the items for profit – [she] was even seen wearing one of the stolen necklaces for show. Further, [Moore] lied to police. [Moore] stated she threw the stolen gun into a lake and disposed of the stolen jewelry box, when, in reality, she possessed both items. To put it plainly, th[e c]ourt found that [Moore] was not sorry for her actions, she was sorry she got caught.
>
> Accordingly, th[e c]ourt imposed a sentence within the standard range of the Sentencing Guidelines . . .. Th[e c]ourt found this sentence necessary to protect the public from predators like [Moore], who will violate the trust of the community's most vulnerable. Further, this sentence was needed to rehabilitate [Moore], who used a paid position of power to steal[,] and then only showed remorse when left with no other choice.

Trial Court Opinion, 3/22/22, at 5-6 (internal citations to the record omitted); *accord* N.T., 12/13/21, at 21-24 (trial court stating on the record its reasons for the sentence).

Following our review, we discern no abuse of discretion by the trial court. We observe that Moore was sentenced for only one of the charges to which she pleaded guilty, and the period of incarceration is within the standard range of the guidelines. *See* N.T., 8/26/21, at 9 (trial court informing Moore at her plea hearing that her standard-range sentence began at fifteen to twenty-one months); N.T., 12/13/21, at 24 (trial court imposing twenty-one to forty-eight months of incarceration plus concurrent probation). In fashioning this sentence, the trial court noted it considered, among other things, Moore's PSI. *See* N.T., 12/13/21, at 24. The court is thus presumed to have considered Moore's mitigating information. *See Corley*, 31 A.3d at 298. Moreover, a standard-range sentence, in addition to a PSI, militates against Moore's sentence being excessive. *See id*; *see also Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa. Super. 2019) (stating that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code") (internal citation omitted). Furthermore, the trial court was permitted to consider Mrs. Hertz's testimony at sentencing. *See Ali*, 149 A.3d at 39 (holding that a trial court may consider at sentencing the defendant's impact on the victim, the community, and indirect victims); *see also* 42 Pa.C.S.A. § 9721(b). We lastly note that the

trial court indicated it did consider Moore's mitigating evidence, but concluded, based on the attendant circumstances, that her cooperation did not reflect genuine remorse, and, moreover, because Moore used her position to victimize a bedridden man in hospice, a standard-range sentence best served her rehabilitative needs as well as society's protection. ***See Macias***, 968 A.2d at 778 (stating, "The . . . court merely chose not to give the mitigating factors as much weight as [the a]ppellant would have liked and decided that the facts did not warrant . . . a sentence lower than the standard range. We cannot re-weigh the sentencing factors and impose our judgment [instead]"). We conclude the trial court did not abuse its discretion by imposing a standard-range sentence on Moore.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2022